WATERMAN, Justice.
This case returns to us on defendants’ appeal following a remand. On October 29, 2007, after a jury found the State terminated plaintiff in violation of her right to self-care leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612(a)(1)(D) (2000), the district court awarded plaintiff money damages and ordered the State to reinstate her to her former position in the Polk County Clerk of Court Office. Defendants appealed and successfully requested a stay of plaintiffs reinstatement pending the outcome. In Lee v. State (Lee I), we held sovereign immunity precluded plaintiffs judgment for money damages against the State. 815 N.W.2d 731, 743 (Iowa 2012). We remanded the case for the district court to determine plaintiffs entitlement to prospective injunctive relief against a state official under Ex parte Young, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714, 727 (1908). Lee I, 815 N.W.2d at 743. On October 18, 2012, the district court again ordered plaintiff reinstated and awarded her lost wages and benefits from the date of the original 2007 reinstatement order. The district court concluded that plaintiff was entitled to reinstatement as a form of in-junctive relief and that the State had waived its sovereign immunity by seeking a stay of the reinstatement order and promising to pay plaintiffs interim wages and benefits if we affirmed the 2007 order.
*671 Defendants nevertheless contend that the new reinstatement order should be reversed because plaintiff failed to adequately plead claims for such relief under Ex parte Young and the award of wages since 2007 is barred by sovereign immunity. We disagree. Plaintiffs pleadings were sufficient to preserve her right to Ex parte Young remedies, and the parties litigated the reinstatement remedy by consent. Further, this case is strikingly similar'to Barnes v. Bosley in which the plaintiff was wrongfully terminated from the St. Louis City Circuit Court Clerk’s Office. 828 F.2d 1258, 1255 (8th Cir.1987). We agree with the Eighth Circuit Court of Appeals holding in that case: the Eleventh Amendment to the United States Constitution does not bar an award of wages and benefits for the period a reinstatement order was stayed. See Barnes, 828 F.2d at 1257. We therefore affirm the district court’s 2012 order.
I. Background Facts and Proceedings.
On November 10, 2004, after taking FMLA leave to cope with anxiety, Tina Lee was terminated from her employment with the judicial branch of the State of Iowa, in the office of the Polk County Clerk of Court. Lee sued the State of Iowa and the Polk County Clerk of Court, alleging violations of her FMLA rights. A jury ultimately found in favor of Lee and awarded her past lost earnings. The district court awarded additional amounts for Lee’s attorney fees, litigation expenses, and interest and ordered her reinstated to her former position. Additional detail concerning Lee’s employment and the parties’ claims and defenses are set forth in Lee I. See 815 N.W.2d at 734-35. We will now focus on the facts relevant to this postre-mand appeal.
At the outset of her lawsuit, Lee demanded the following remedies in her petition’s prayer for relief:
[Jjudgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for liquidated damages, for interest as allowed by law, for attorneys’ fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Family and Medical Leave Act.
The case proceeded to trial, which commenced September 10, 2007. On the witness stand, Lee asked the court to reinstate her to her former position, and defendants cross-examined her on the propriety of reinstatement in light of Lee’s soured relationship with her supervisor in the clerk’s office. Outside the presence of the jury, the district court discussed the remedy of reinstatement with the parties, and defendants acknowledged “reinstatement is one of the equitable remedies available to the Court if the jury concludes that there was liability.” The district court responded, “That’s an agreement by both parties, that if there’s a finding for the Plaintiff this Court has the subject matter jurisdiction to reinstate the Plaintiff.” The parties also stipulated the issue of front pay would be reserved for the district court.
Two claims under the FMLA were submitted to the jury: wrongful discharge and retaliation. On September 13, the jury found in favor of Lee on both claims and awarded her damages for past lost earnings in the amount of $165,122. Defendants moved for a judgment notwithstanding the verdict, arguing sovereign immunity precluded judgment against the State. Lee resisted this motion and filed her own posttrial “Motion for Reinstate *672 ment and Other Equitable Relief,” requesting that the court order defendants to reinstate her, adopt an FMLA retaliation policy, and provide all employees with FMLA training. Defendants resisted, arguing reinstatement was impractical. On October 15, the district court held a hearing on the posttrial motions. The district court ruled on the record in favor of Lee, ordering her reinstatement.
The district court memorialized its oral rulings in a written order entered October 29. The district court concluded Congress abrogated the State’s sovereign immunity as to the self-care provision of the FMLA. The district court therefore awarded Lee past lost earnings in the amount of the jury verdict of $165,122, with $19,127 in prejudgment interest, plus $68,109 in attorney fees and $5734 in litigation expenses. The district court ordered the State to reinstate Lee and pay her lost wages and benefits in the amount of $1146 weekly from the date of the jury verdict until the date of her reinstatement. Additionally, for the purposes of retirement benefits and FMLA leave, the court ordered defendants to credit Lee for years of service as if she had never been terminated.
Defendants filed a notice of appeal and a “Motion to Stay All Proceedings Pending Appeal without Filing a Supersedeas Bond.” In the motion to stay, defendants represented to the district court,
[t]he plaintiff will not suffer any irreparable harm or injury if the district court stays all proceedings. If the Supreme Court affirms the district court, then the State of Iowa will pay the judgment, plus any amounts owed to the plaintiff during the time she should have been reinstated and when she is reinstated. Thus, the plaintiff will be made whole.
Lee agreed to stay collection of the monetary judgment, but asked the district court to compel her reinstatement.
In a January 25, 2008 ruling on the motion to stay, the district court concluded:
Plaintiff here has shown that her loss has been, and continues to be, substantial. A stay of reinstatement would require Plaintiff to wait another 18-24 months before allowing her to return to work. This delay in salary and benefits would surely cause significant harm to Plaintiff as she has been unable to find comparable employment.
The district court also considered defendants’ likelihood of success on the merits, whether defendants would suffer irreparable injury in the absence of a stay, and the public interests implicated. The district court ruled all of the factors supported a denial of the stay of reinstatement and therefore ordered defendants to “immediately reinstate Plaintiff to her previous position.”
On February 16, defendants asked our court to stay Lee’s reinstatement during their appeal, repeating their assurance that Lee would not suffer irreparable harm from a stay. We granted defendants’ motion, staying Lee’s reinstatement. We transferred the case to the court of appeals, which affirmed the judgment in favor of Lee. We granted defendants’ application for further review.
We held the appeal in abeyance pending a decision by the United States Supreme Court on the issue of whether the self-care provision of the FMLA validly abrogated the states’ sovereign immunity from suit. That decision, Coleman v. Court of Appeals of Maryland, held Congress failed to “identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations,” and therefore, Congress failed to abrogate *673 sovereign immunity. — U.S. -, 132 S.Ct. 1327, 1338, 182 L.Ed.2d 296, 307 (2012) (plurality opinion). Accordingly, we held on May 25, 2012, that sovereign immunity precluded Lee’s judgment against the State for money damages. Lee I, 815 N.W.2d at 743. But, we noted injunctive relief remained available to Lee under the doctrine of Ex parte Young:
Nevertheless, states are bound to follow the self-care provisions of the FMLA, and state employees who are 'wrongfully denied self-care leave are still permitted to seek injunctive relief against the responsible state official. [Coleman, — U.S. at -, 132 S.Ct. at 1350, 182 L.Ed.2d at 320 (Ginsburg, J., dissenting) ] (citing Ex parte Young, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714, 727 (1908) (establishing proposition that suit for injunctive relief against state official does not offend sovereign immunity))....
In this case, the judgment entered by the district court was predicated on legal error. Accordingly, the noninjunctive relief granted in the judgment cannot stand, and we must reverse the district court. We remand the case to the district court to determine what relief granted in its judgment is still available to Lee within the framework of this lawsuit, findings of the jury at trial, and the cloak of immunity protecting the State. The district court shall permit the parties to be heard on this issue and enter a new final judgment for such relief. We do not retain jurisdiction.
Id. (emphasis added).
On remand, Lee filed a “Motion to Enforce Order Granting Equitable Relief,” requesting enforcement of the 2007 order’s injunctive relief, including her reinstatement, restoration of her retirement and FMLA benefits, and lost wages and benefits of $1146 weekly from the date of the 2007 order. Lee alternatively argued the State had waived sovereign immunity by stipulating it would pay her lost wages and benefits if the reinstatement order was affirmed. Lee also moved to amend her petition to expand her prayer for relief and to specifically name Lois Leary as the Polk County Clerk of Court who fired her in 2004.
Defendants resisted Lee’s motions. They argued Lee’s motion to amend was untimely and beyond the scope of our remand. Defendants contended Ex parte Young injunctive relief is available only against state officials sued in their official capacity and asserted Lee “has never named any state official at all, let alone one named in his or her official capacity.” Further, defendants argued Lee did not request prospective injunctive relief in her original petition. Defendants also challenged the characterization of lost wages and benefits as prospective injunctive relief, arguing that an award of lost wages and benefits is essentially a retroactive monetary award barred by sovereign immunity. Finally, defendants argued they did not waive immunity by pursuing a stay of Lee’s reinstatement because they had agreed to pay Lee’s lost wages only if our court affirmed the district court in Lee I— and we had instead reversed and remanded for further proceedings.
The district court entered its ruling on these motions on October 18, 2012. The district court found Lee’s original petition suing the “Clerk of Court” was sufficient to allow prospective injunctive remedies under Ex parte Young, stating “the Clerk of the Court is a state official and it is unnecessary to name him or her by his or her given name, as long as his or her official title is named.” The district court found it significant that Lee I remanded the case to determine “what relief granted in the judgment is still available to Lee,” *674 without suggesting that the “Clerk of Court” was not a proper party. The district court ruled that the date of the original judgment, October 29, 2007, was “the effective date requiring prospective injunc-tive relief.” The district court found:
The stay did not change the effective date of Plaintiffs reinstatement, but prevented enforcement of such reinstatement .... [Tjhis Court finds that the Eleventh Amendment does not bar an award of pay to Plaintiff for the period during which the stay was in effect. This Court ordered prospective injunctive relief requiring future compliance and liability for payment of Plaintiffs wages and benefits during this time, which is permissible.
The district court also agreed with Lee’s alternative argument, that defendants waived sovereign immunity when requesting a stay of her reinstatement. The district court concluded:
Defendants made assertions that if the Supreme Court affirms the District Court, it will pay all damages stemming from the stay. The Supreme Court did not specifically reverse the District Court’s injunctive relief, so it is still the rule of the case. If Defendants did have immunity from the monetary damages stemming from their stay of the injunc-tive relief, then they clearly waived it when they made the promise to pay such damages.
Thus, the district court denied Lee’s motion to amend as moot and ordered defendants to immediately reinstate Lee, pay her lost wages and benefits from October 29, 2007, to the date of reinstatement in the amount of $1146 weekly,[1] provide her retirement and FMLA benefits as if she had never been terminated, and pay post-judgment interest.
Defendants appealed, raising five issues. Defendants do not argue Lee waived her right to Ex parte Young relief by failing to raise the doctrine as an exception to the State’s sovereign immunity defense. Rather, they argue: (1) Ex parte Young injunctive relief is available only in federal court, (2) Lee is not entitled to Ex parte Young injunctive relief because she did not specifically request it in her petition, (8) Lee’s failure to name a State official as a defendant precludes Ex parte Young in-junctive relief, (4) the 2007 order for reinstatement is not Ex parte Young injunctive relief, and (5) they did not waive sovereign immunity by seeking the stay of her reinstatement and promising to make her whole if her relief was affirmed in the first appeal. We retained this appeal.
II. Standard of Review.
The availability of Ex parte Young remedies is a question of law. See CSX Transp., Inc. v. Bd. of Pub. Works, 138 F.3d 537, 541 (4th Cir.1998) (reviewing award of Ex parte Young relief de novo). Accordingly, our review of the district court’s award of relief under Ex parte Young is for correction of errors at law. See Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc., 714 N.W.2d 603, 609 (Iowa 2006) (reviewing ruling on legal issue for correction of errors at law).
III. Analysis.
We begin with an overview of Ex parte Young injunctive relief, one of sever *675 al exceptions to state sovereign immunity.[2] We discussed two exceptions to sovereign immunity in Lee I: a private person may sue a state directly if the state has waived its sovereign immunity, or if Congress has validly abrogated the states’ sovereign immunity. Lee I, 815 N.W.2d at 789-43 (analyzing these two exceptions with regard to the self-care provision of the FMLA). Ex parte Young injunctive relief provides a third exception to state sovereign immunity, in recognition of the fact that “[although a state’s constitutional sovereign immunity prevents individual enforcement of certain federal statutes against a state, such as [Fair Labor Standards Act] claims ..., that immunity does not undermine the basic validity of the legislation.” Gill v. Pub. Emps. Ret. Bd. of Pub. Emps. Ret. Ass’n, 135 N.M. 472, 90 P.3d 491, 497 (2004); see also Va. Office for Prot. & Advocacy v. Stewart, — U.S.-,-, 131 S.Ct. 1632, 1638, 179 L.Ed.2d 675, 686 (2011) (noting the Ex parte Young doctrine “has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to permit the federal courts to vindicate federal rights” (internal quotation marks omitted)).
The waiver and congressional abrogation exceptions to sovereign immunity allow an individual to sue the state, while Ex parte Young allows an individual to sue a responsible state official in his or her official capacity to compel that official to comply with federal law. Stewart, — U.S. at -, 131 S.Ct. at 1638, 179 L.Ed.2d at 685-86 (discussing the history of Ex parte Young). The United States Supreme Court held in Ex parte Young that “a suit challenging the constitutionality of a state official’s action is not one against the State.” Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67, 79 (1984). Under Ex parte Young, a state official who violates federal law is “stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct” because “[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.” Ex parte Young, 209 U.S. at 160, 28 S.Ct. at 454, 52 L.Ed. at 729. This doctrine “rests on the premise-less delicately called a ‘fiction,’ — that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.” Stewart, — U.S. at -, 131 S.Ct. at 1638, 179 L.Ed.2d at 686 (citation omitted); see also Seminole Tribe of Florida v. Florida, 517 U.S. 44, 174, 116 S.Ct. 1114, 1180, 134 L.Ed.2d 252, 339 (1996) (Souter, J„ dissenting) (“The decision in Ex parte Young, and the historic doctrine it embodies, thus plays a foundational role in American constitutionalism, and while the doctrine is sometimes called a ‘fiction,’ the long history of its felt necessity shows it to be *676 something much more estimable.... ”). Thus, a state’s sovereign immunity does not necessarily bar injunctive relief against a state official to require compliance with federal law. See Stewart, — U.S. at -, 131 S.Ct. at 1638, 179 L.Ed.2d at 686.
A judgment under Ex parte Young is limited, however, to prospective injunctive relief, as an award of retroactive money damages would run afoul of sovereign immunity. Id. Prospective injunctive relief is not coextensive with “equitable relief.” Edelman v. Jordan, 415 U.S. 651, 666-67, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662, 674-75 (1974) (holding monetary relief payable out of the state treasury is not available against a state officer merely because “the relief may be labeled ‘equitable’ in nature”). Nor does sovereign immunity bar all judgments with “fiscal consequences to state treasuries”: such fiscal consequences are permissible if they are “the necessary result of compliance with decrees which by their terms were prospective in nature.” Id. at 667-68, 94 S.Ct. at 1358, 39 L.Ed.2d at 675 (“State officials, in order to shape their official conduct to the mandate of the Court’s decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct.”); see also Kentucky v. Graham, 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114, 124 n. 18 (1985) (“Monetary relief that is ‘ancillary’ to in-junctive relief also is not barred by the Eleventh Amendment.”). Consequently, “a court need only conduct a ‘straightforward inquiry’ into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.” Verizon Md. Inc. v. Pub. Serv. Comm’n, 535 U.S. 635, 645, 122 S.Ct. 1753, 1760, 152 L.Ed.2d 871, 882 (2002). For example, in Barnes, state officials were ordered to reinstate plaintiff but obtained a stay of reinstatement pending appeal. 828 F.2d at 1255. After plaintiff prevailed on appeal, defendants were ordered to pay plaintiffs salary for the period between the reinstatement order and the date she in fact was reinstated. Id. (noting backpay paid by State of Missouri).[3] We now turn to defendants’ arguments against Lee’s reinstatement and related relief under Ex parte Young.
A. Whether Ex parte Young Relief is Available in State Court. In their appellate brief, defendants argue for the first time that Ex parte Young relief is available only in federal court. As a gen *677 eral proposition, “issues must be raised in the district court before we may review them on appeal.” Lee I, 815 N.W.2d at 739. There is a question whether the issue is preserved. In any event, we decide the issue on the merits: Ex parte Young applies to state-court suits. We reached that conclusion in Lee I when we ordered the remand to allow the district court to determine the relief available to Lee under Ex parte Young. See id. at 743. The view that the doctrine is applicable in state courts is well established. See Alden v. Maine, 527 U.S. 706, 746-47, 119 S.Ct. 2240, 2262-63, 144 L.Ed.2d 636, 673-74 (1999) (citing Gen. Oil Co. v. Crain, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754 (1908), as “extending the rule of [Ex parte Young] to state-court suits”); Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 316-17 & n. 14, 117 S.Ct. 2028, 2057-58 & n. 14, 138 L.Ed.2d 438, 478 & n. 14 (1997) (Souter, J., dissenting) (stating “every litigant seeking prospective relief in federal court under Young may obtain some adequate redress in state court as well” and noting “in every case in which Ex parte Young supports the exercise of federal-question jurisdiction against a state officer, General Oil prohibits the declination of state jurisdiction over the same officer on state immunity grounds”). The Supreme Court held in Alden that Eleventh Amendment immunity shelters states from suit in both federal and state court. 527 U.S. at 754, 119 S.Ct. at 2266, 144 L.Ed.2d at 678. Indeed, in Lee I, defendants acknowledged Eleventh Amendment sovereign immunity “applies equally in state court and federal court.” 815 N.W.2d at 738. The corollary to this principle is that exceptions to Eleventh Amendment immunity apply in both federal and state court. As Justice Souter noted in Coeur d’Alene Tribe, “it appears that in all 50 States ..., private plaintiffs may obtain declaratory and injunctive relief in state court for the acts of state officials in circumstances where relief would be available in federal court under Young.” 521 U.S. at 317 n. 15, 117 S.Ct. at 2058 n. 15, 138 L.Ed.2d at 479 n. 15 (Souter, J., dissenting) (collecting cases); accord Collins v. State Bd. of Soc. Welfare, 248 Iowa 369, 373, 81 N.W.2d 4, 6 (1957) (recognizing that when “no judgment or decree is asked against the State, but the suit is rather to require its officers and agents to perform their duty, there is no immunity recognized” and ordering injunctive relief for a violation of the Iowa Constitution); Pierce v. Green, 229 Iowa 22, 32, 294 N.W. 237, 245 (1940) (commenting “[i]f the State has any interest in this case it is that its officers perform their duties” and ordering the state to conduct tax assessments as required by law).
Further, state courts can order Ex parte Young relief not only for violations of the Federal Constitution, but also for violations of federal statutes:
Neither in theory nor in practice has it been shown problematic to have federal claims resolved in state courts where Eleventh Amendment immunity would be applicable in federal court but for an exception based on Young. For purposes of the Supremacy Clause, it is simply irrelevant whether the claim is brought in state or federal court....
... A doctrine based on the inherent inadequacy of state forums would run counter to basic principles of federalism ....
Interpretation of federal law is the proprietary concern of state, as well as federal, courts.... It would be error coupled with irony were we to bypass the Eleventh Amendment, which enacts a scheme solicitous of the States, on the sole rationale that state courts are inadequate to enforce and interpret federal rights in every case.
*678 Coeur d’Alene Tribe, 521 U.S. at 274-76, 117 S.Ct. at 2037, 138 L.Ed.2d at 451-52 (citations omitted);[4] see also Lee I, 815 N.W.2d at 743 (ordering remand to determine prospective injunctive relief available under Ex parte Young for violation of FMLA). Thus, our court has ordered a state official to address violations of federal law, notwithstanding sovereign immunity. See McKeown v. Brown, 167 Iowa 489, 497-99, 149 N.W. 593, 595-97 (1914) (ordering state treasurer to return wrongfully escheated inheritance to rightful heir, taxed at rate imposed by federal treaty).
B. Whether Lee Named a Proper Party as a Defendant for Relief Under Ex parte Young. Defendants next argue Lee is not entitled to Ex parte Young relief because she did not name a state official as a defendant, “let alone an official being sued in that official’s ‘official’ capacity.” This omission is not fatal. Lee’s petition named “Defendants State of Iowa and Polk County Clerk of Court.” “The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading.” Coeur d’Alene Tribe, 521 U.S. at 270, 117 S.Ct. at 2034, 138 L.Ed.2d at 448. We hold the “Polk County Clerk of Court” is a state official and Lee was not required to plead the given name of the individual[5] holding that position.
Two principles support our conclusion. First, the “ ‘course of proceedings’ ” will typically “indicate the nature of the liability sought to be imposed.” Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14, 87 L.Ed.2d at 122 n. 14 (quoting Brandon v. Holt, 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878, 884 (1985) (recognizing “[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both”)). Here, Lee sued the Polk County Clerk of Court without seeking to impose personal liability on Lois Leary, her supervisor. Our remand order assumed a proper party was named for injunctive relief.
Second, “[i]f a plaintiffs complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims.” Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir.1995); accord Baker v. Chisom, 501 F.3d 920, 923 (8th Cir.2007). This commonsense approach reinforces our determination that Lee’s pe *679 tition sued the Polk County Clerk of Court in her official capacity. See City of El Paso v. Heinrich, 284 S.W.3d 366, 377 (Tex.2009) (concluding plaintiff sued defendants in their official capacities based on “ ‘the nature of the liability sought to be imposed’ ” and “construing [the] pleadings liberally” (citation omitted)).
Defendants rely on decisions by the Second Circuit and Ninth Circuit, holding Ex parte Young does not apply when a plaintiff fails to name a state official as a defendant: Santiago v. New York State Department of Correctional Services, 945 F.2d 25, 31-32 (2d Cir.1991), and Douglas v. California Department of Youth Authority, 271 F.3d 812, 821 n. 6 (9th Cir.), amended by 271 F.3d 910 (2001). Both cases are distinguishable. In Douglas, the plaintiff sued only an agency, the California Department of Youth Authority. 271 F.3d at 815. In Santiago, the plaintiff sued an agency, the New York State Department of Correctional Services, and a private psychiatrist. 945 F.2d at 27. By contrast, Lee named as a defendant the Polk County Clerk of Court, an individual who is a state official. We hold Lee sued a proper party for Ex parte Young injunctive relief.
C. Whether Lee’s Prayer for Relief Was Adequate for Ex parte Young Injunctive Relief. Defendants in turn argue the court cannot reinstate Lee because her pleadings did not request “Ex parte Young relief’ or “prospective injunctive relief,” and she “even failed to request any relief in the form of reinstatement.” They assert that Lee asked for relief only under the FMLA and that our holding in Lee I, finding sovereign immunity protects the State from self-care FMLA suits, renders her FMLA prayer for relief unenforceable. Relatedly, defendants argue the district court awarded Lee “equitable remedies” available under the FMLA, which they believe are distinct from Ex parte Young injunctive relief.
We disagree that these perceived deficiencies in Lee’s pleadings preclude her from reinstatement and related relief under Ex parte Young. Lee’s petition requested “such other relief as may be just in the circumstances.” Lee contends that under our liberal pleading rules, she adequately put defendants on notice that she sought prospective injunctive relief that includes reinstatement. In any event, we conclude the reinstatement claim was litigated by consent in district court in 2007, obviating any need to amend Lee’s pleadings to specifically request such relief. Finally, we conclude it was unnecessary for Lee or the district court to explicitly plead her reinstatement claim as “Ex parte Young injunctive relief.”
Under Iowa’s notice pleading rules, a prayer for general equitable relief “ ‘is to be construed liberally, and will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence.’ ” Moser v. Thorp Sales Corp., 312 N.W.2d 881, 895 (Iowa 1981) (quoting Holi-Rest, Inc. v. Treloar, 217 N.W.2d 517, 526 (Iowa 1974)); see also Anderson v. Yearous, 249 N.W.2d 855, 858-59 (Iowa 1977) (“The relief granted under the general prayer must be consistent with the case made by the pleadings and must be such as will not surprise the defendant.” (Internal quotation marks omitted.)). We generally expect plaintiffs to identify “the true nature of the action” and narrow the issues “at the pretrial conference or during the trial before instruction.” Tigges v. City of Ames, 356 N.W.2d 503, 507 (Iowa 1984) (citation omitted). Further, parties may consent to try issues beyond the scope of the pleadings. Iowa R. Civ. P. 1.457 (“When issues not raised by the pleadings are tried by express or *680 implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”); Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 229 (Iowa 1998) (rejecting argument that affirmative defense was not specifically pled and holding the issue was tried by consent when it “was presented before the jury and there was abundant evidence to support a jury finding favoring [the defense]”).
Defendants were well aware during the 2007 proceedings that Lee sought reinstatement as a judicial remedy. Reinstatement is a form of prospective injunctive relief. See Nelson v. Univ. of Tex. at Dallas, 585 F.3d 318, 324 (5th Cir.2008) (holding “a request for reinstatement is sufficient to bring a case within the Ex parte Young exception to Eleventh Amendment immunity” because “it is a claim for prospective relief designed to end a continuing violation of federal law”); State Em/ps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 96 (2d Cir.2007) (“Every Circuit to have considered the issue ... has held that claims for reinstatement to previous employment satisfy the Ex parte Young exception to the Eleventh Amendment’s sovereign immunity bar.”); Treleven v. Univ. of Minn., 73 F.3d 816, 819 (8th Cir.1996) (allowing claim for reinstatement under Ex parte Young). At trial, Lee requested reinstatement to her position in the Polk County Clerk of Court Office. Defendants cross-examined her on this issue. During trial, the district court noted the parties agreed “that if there’s a finding for the Plaintiff this Court has the subject matter jurisdiction to reinstate Plaintiff.” Lee’s posttrial motion requested reinstatement. Though defendants argued reinstatement was inappropriate in both their brief resisting reinstatement and at the hearing, their brief acknowledged “courts should reinstate employees who have suffered unlawful employment discrimination” and conceded “[without question, the district court can order the State of Iowa to reinstate Lee.” The district court’s January 25, 2007 ruling on defendants’ motion to stay recounted “[d]uring trial, the parties stipulated that the issues of reinstatement and front pay would be reserved for the Court.” Defendants were not surprised by Lee’s request for injunctive relief of reinstatement and had ample opportunity to oppose such relief.
In response to defendants’ argument that equitable relief under the FMLA is distinct from injunctive relief under Ex parte Young, we conclude the label is not controlling. Lee’s theory of liability remained the same on remand: she is entitled to reinstatement because defendants violated the FMLA. Ex parte Young in-junctive relief is a method of enforcing valid federal legislation, in this case the self-care provision of the FMLA. As such, it is appropriate to conceptualize Lee’s reinstatement both as relief under the FMLA and as Ex parte Young relief. Defendants cite no authority to the contrary.
D. Whether an Award of Earnings from the Date of the Original Reinstatement Order to Her Actual Reinstatement Constitutes Prospective In-junctive Relief. Finally, we address defendants’ argument that the award of wages and benefits from October 2007 constitutes impermissible retroactive relief. The Ex parte Young doctrine allows only prospective injunctive relief. Edelman, 415 U.S. at 664, 94 S.Ct. at 1356, 39 L.Ed.2d at 673. “[T]he Supreme Court has established a bright line Eleventh Amendment test between permissible prospective and impermissible retroactive relief, with the effective date of the District Court’s order requiring future compliance being the operative date.” Barnes, 828 *681 F.2d at 1257. Thus, monetary awards through injunctive relief are permissible under the Eleventh Amendment so long as they fall on the prospective side of this timeline. See Milliken v. Bradley, 433 U.S. 267, 290, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745, 761-62 (1977) (“That the programs are also ‘compensatory’ in nature does not change the fact that they are part of a plan that operates prospectively. ... We therefore hold that such prospective relief is not barred by the Eleventh Amendment.”); Vargas v. Trainor, 508 F.2d 485, 491 (7th Cir.1974) (“[T]he entry of a court order or judgment requiring that payments be made divides the past from the prospective for Eleventh Amendment purposes.”); Libby v. Marshall, 653 F.Supp. 359, 361-62 (D.Mass.1986) (“Later cases have made it even more clear that the relevant distinction for Eleventh Amendment purposes is that between a damage award and an injunction, not between one that would cost the state money and one that would not.”). The parties disagree on the date from which prospective relief should be measured.
Defendants argue our decision in Lee I reversed the district court’s October 29, 2007 order in its entirety, making the district court’s October 18, 2012 order of reinstatement the point from which we should award prospective relief of her weekly wages and benefits. They therefore assert the district court’s 2012 order for lost wages and benefits from 2007 im-permissibly awarded Lee retroactive monetary awards. Lee disagrees, arguing prospective relief should be measured from the 2007 reinstatement order. Lee also argues defendants waived any objection to paying her lost wages and benefits post-2007 by asking for a stay of her reinstatement and assuring the court she would be made whole if she prevailed. Defendants respond that they agreed to pay Lee’s post-2007 lost wages only if we affirmed in Lee I, and they assert our opinion was instead a reversal. We conclude Lee is correct on both accounts: October 29, 2007, is the date from which prospective relief is properly determined and defendants waived their objection to paying lost wages from this date by attaining a stay of Lee’s reinstatement. Any other result would “permit States to achieve unfair tactical advantages.” See Lapides v. Bd. of Regents of Univ. Sys., 535 U.S. 613, 621, 624, 122 S.Ct. 1640, 1645-46, 152 L.Ed.2d 806, 814, 816 (2002) (holding state’s removal of suit to federal court waived its Eleventh Amendment immunity).
Defendants’ arguments rest on a flawed premise — that we did not uphold the reinstatement remedy in Lee I. Defendants are technically correct that Lee I did not “affirm” the district court’s 2007 judgment. Our decision stated that it reversed the judgment of the district court and remanded the case for further proceedings, ordering the district court to “enter a new final judgment.” Lee I, 815 N.W.2d at 743. But, we agree with the district court’s interpretation of our remand: “None of the trial court’s holdings regarding equitable relief were specifically overruled, and as law of the case, they must still be enforced.” We specifically held only the “noninjunctive relief granted in the judgment cannot stand.” Id. We limited the district court’s task on remand to “determining] what relief granted in its judgment is still available to Lee within the framework of this lawsuit, findings of the jury at trial, and the cloak of immunity protecting the State.” Id. (emphasis added). The district court was therefore responsible only for categorizing the elements of the 2007 order as injunctive or noninjunctive. In “the framework of this lawsuit,” the district court’s 2012 ruling correctly concluded the 2007 reinstatement *682 order is relief granted in that judgment that is still available to Lee.
Accordingly, October 29, 2007, the date of the original reinstatement order, is the effective date on which defendants were required to reinstate Lee to her former position. An award of Lee’s lost earnings from that date forward is properly classified as prospective relief. See Buckhanon v. Percy, 708 F.2d 1209, 1216 (7th Cir.1983) (authorizing payments onward from “the date upon which the State of Wisconsin came under a court-imposed obligation to provide more adequate notice before reducing or terminating benefits”). The 2012 order did not “impose upon the State ‘a monetary loss resulting from a past breach of a legal duty.’ ” Verizon, 535 U.S. at 646, 122 S.Ct. at 1760, 152 L.Ed.2d at 882 (emphasis omitted) (quoting Edelman, 415 U.S. at 668, 94 S.Ct. at 1358, 39 L.Ed.2d at 676). Rather, the 2007 order imposed prospective injunctive relief from defendants’ violation of the FMLA, creating an obligation to reinstate Lee. The 2012 order then required payment of state funds as a necessary consequence of defendants’ stay of the 2007 order. Compare Milliken, 433 U.S. at 289-90, 97 S.Ct. at 2762, 53 L.Ed.2d at 761-62 (upholding desegregation plan that required state to bear half the cost of implementing comprehensive educational programs), with Edelman, 415 U.S. at 668, 94 S.Ct. at 1358, 39 L.Ed.2d at 675-76 (overturning district court decree that “require[d] payment of state funds, not as a necessary consequence of compliance in the future ..., but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard” (emphasis added)).
The Eighth Circuit adjudicated a similar issue in a case with comparable facts. In Barnes, the St. Louis City Circuit Court Clerk’s Office terminated Shirley Barnes on January 3, 1983, in violation of her First Amendment rights. 828 F.2d at 1255. On July 27, the district court ordered Barnes reinstated and awarded her backpay from January 3. Id. Defendants appealed and were granted a stay of judgment pending the appeal. Id. The Eighth Circuit affirmed as to Barnes, but reversed as to another plaintiff. Id. On remand, the district court modified its prior judgment as it applied to the other plaintiff, but “[t]he prior judgment remained unchanged insofar as it applied to Barnes.” Id. In further proceedings, defendants raised a sovereign immunity challenge to the back-pay award for the time between her termination and the reinstatement order and for the time the stay was in effect. Id. The district court ruled that both components of backpay constituted retrospective monetary relief prohibited by the Eleventh Amendment, but held that defendants had waived sovereign immunity for the post-July backpay by seeking a stay. Id. at 1255-56. Therefore, the district court awarded Barnes backpay from July 1983 through the date of her reinstatement. Id. at 1256. Defendants appealed this ruling. Id. at 1256-57.
The Eighth Circuit “rejected] defendants’ argument that the Eleventh Amendment precludes an award of backpay for the period during which the stay was in effect.” Id. at 1257. The court stated:
In our view, the stay merely prevented immediate execution on and enforcement of the judgment.... Thus, insofar as the Eleventh Amendment is concerned, July 27, 1983, the date of the District Court’s original order finding a constitutional violation and granting Barnes her remedies, is the operative date after which prospective relief (ie., liability for the payment of Barnes’s salary) is per *683 missible. We hold that the Eleventh Amendment does not bar an award of pay to Barnes for the period during which the stay pending appeal was in effect.
Id. at 1257-58 (footnotes omitted). The court aptly commented, “in the circumstances of this case the term ‘backpay’ is somewhat of a misnomer.” Id. at 1257 n.
5. Because the court agreed with Barnes that backpay from the date of the judgment was prospective, it did not reach her alternative argument that the defendants had waived sovereign immunity by seeking the stay. Id. at 1257-58 & n. 6.[6]
We agree not only with the Eighth Circuit’s conclusion regarding backpay awards during a stay, but also with the Barnes district court’s conclusion that the state waived its sovereign immunity by requesting a stay. The Barnes district court recounted the assurances given by the defendants to persuade the court to issue a stay of reinstatement:
“Plaintiffs, ... incorrectly and with exaggeration seek to describe the harm that would result to them if the stay of judgment is granted.... With respect to plaintiffs’ income and benefits, ... their alleged injury can be calculated and compensated by money damages if they were successful on a case on the merits. It is obvious that the amount which may be due plaintiffs for loss of income and benefits can be calculated and paid.”
Barnes v. Bosley, 625 F.Supp. 81, 86 (E.D.Mo.1985). The district court concluded:
By this representation, the defendants waived the eleventh amendment protection they had as to Barnes because of the stay. The result is that defendants are liable to Barnes for reinstatement and benefits from the date of this Court’s original order, July 27, 1983.

Id.

Defendants made equivalent assurances here to obtain a stay of reinstatement — “[i]f the Supreme Court affirms the district court, ... the State of Iowa will pay ... any amounts owed to the plaintiff during the time she should have been reinstated and when she is reinstated.” We hold those representations waived the State’s sovereign immunity. “A representation made in a judicial proceeding for the purpose of inducing the court to act or refrain from acting satisfies the [waiver] requirements stated in Edelman. ” Vargas, 508 F.2d at 492; see also Vennerberg Farms, Inc. v. IGF Ins. Co., 405 N.W.2d 810, 814 (Iowa 1987) (recognizing the “commonsense” doctrine of “judicial estop-pel or ‘preclusion by inconsistent positions’ ... prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding” (citation omitted)). In granting the stay, we relied upon defendants’ representation that Lee would “not suffer any irreparable harm or injury” and would “be made whole.” Defendants cannot now use the Eleventh Amendment to avoid honoring their promise. See Toll v. Moreno (Toll II), 458 U.S. 1, 17-18, 102 S.Ct. 2977, 2986, 73 L.Ed.2d 563, 576-77 (1982) (holding state university waived its sovereign immunity by seeking a stay and representing to the district court that it would make refund payments if the case was affirmed *684 on appeal);[7] Vargas, 508 F.2d at 492 (holding defendant waived sovereign immunity by representing he would make deficiency payments if the plaintiffs were ultimately successful in order to persuade the court not to enter an injunction against him).
We therefore hold the district court correctly awarded Lee her lost earnings from October 29, 2007, as prospective relief under Ex parte Young.
IV. Disposition.
For the foregoing reasons, we hold Lee is entitled to prospective injunctive relief under Ex parte Young, including an award of her weekly wages and benefits from the date the district court ordered her reinstatement on October 29, 2007. We therefore affirm the district court’s order of October 18, 2012.
AFFIRMED.
All justices concur except CADY, C.J., and WIGGINS, J., who dissent.

. Defendants did not argue in district court or on appeal that Lee failed to mitigate her damages or that her award should be reduced by any amount that she earned at other employment during these years. Cf. Bames, 828 F.2d at 1259 (remanding case with instructions to determine the amount a comparable backpay award should have been reduced to offset plaintiff's interim earnings).

. As we discussed in Lee I, “ ‘the States’ immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.’” 815 N.W.2d 731, 739 (quoting Alden v. Maine, 527 U.S. 706, 713, 119 S.Ct. 2240, 2246-47, 144 L.Ed.2d 636, 652 (1999)). While the phrase "Eleventh Amendment immunity” "is convenient shorthand,” it is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.” Id. at 738-39 (quoting Alden, 527 U.S. at 713, 119 S.Ct. at 2246-47, 144 L.Ed.2d at 652). The Eleventh Amendment to the United States Constitution provides:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

. Other federal court decisions enforcing federal laws have required states to expend their funds pursuant to prospective awards, notwithstanding the Eleventh Amendment. In Hutto v. Finney, the district court issued an injunction following a finding that conditions in Arkansas prisons violated the constitution. 437 U.S. 678, 683, 98 S.Ct. 2565, 2570, 57 L.Ed.2d 522, 530 (1978). The district court later determined defendants violated the court's orders and sanctioned defendants by awarding plaintiffs their attorney fees. Id. at 684-85, 98 S.Ct. at 2570, 57 L.Ed.2d at 530-31. The Supreme Court upheld this award, holding the "less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief.” Id. at 691, 98 S.Ct. at 2574, 57 L.Ed.2d at 534. In Millikan v. Bradley, the state was ordered to bear half the cost of implementing comprehensive educational programs pursuant to a desegregation plan. 433 U.S. 267, 288-90, 97 S.Ct. 2749, 2761-62, 53 L.Ed.2d 745, 761-62 (1977). In Rye Psychiatric Hospital Center, Inc. v. Surles, the court found defendants had improperly calculated payment rates for the plaintiff Medicaid provider. 777 F.Supp. 1142, 1147 (S.D.N.Y. 1991). The court later ordered defendants to reimburse plaintiff for inadequate payments made after the date of the original order. Id. State officials in Libby v. Marshall were ordered to pay for jail maintenance and renovations after the court found conditions at the jail violated prisoners' constitutional rights. 653 F.Supp. 359, 363 (D.Mass.1986).

. This quotation comes from part II-C of the principal opinion written by Justice Kennedy and joined by Chief Justice Rehnquist. See Coeur d'Alene Tribe, 521 U.S. at 274-76, 117 S.Ct. at 2037, 138 L.Ed.2d at 451-52. The three-justice concurrence took issue with parts II-B and II-C of the principal opinion, which suggested the inadequacy of a state forum is a prerequisite to federal jurisdiction in Ex parte Young cases. See id. at 294, 117 S.Ct. at 2046, 138 L.Ed.2d at 463 (O’Connor, J., concurring in part and concurring in the judgment). The concurrence stated, "There is no need to call into question the importance of having federal courts interpret federal rights — particularly as a means of serving a federal interest in uniformity — to decide this case.” Id. The concurrence did not disagree, however, with the principle reflected in the passage we quote above, stating, "Nor does acknowledging the interpretive function of federal courts suggest that state courts are inadequate to apply federal law.” Id. The four dissenters agreed: "Federal-question jurisdiction turns on subject matter, not the need to do some job a state court may wish to avoid; it addresses not the adequacy of a state judicial system, but the responsibility of federal courts to vindicate what is supposed to be controlling federal law.” Id. at 313, 117 S.Ct. at 2055, 138 L.Ed.2d at 476 (Souter, J., dissenting).

. As a practical matter, naming a state official by job title alone, without including the official’s given name, avoids the need to amend the petition when a new person is hired into that role. Lois Leary was the Polk County Clerk of Court in 2004, but Randy Osborn now holds that position.

. The Eighth Circuit further concluded the district court miscalculated Barnes’s backpay by refusing to offset the award by the amount Barnes had earned at another job while awaiting her reinstatement. Id. at 1258-59. The Eighth Circuit remanded the case with instructions to calculate Barnes's interim earnings and to reduce her backpay award by that amount. Id. at 1259.

. The 1982 decision in Toll II was the second time the case had reached the United States Supreme Court. 458 U.S. at 8, 102 S.Ct. at 2981, 73 L.Ed.2d at 570. In a 1979 per curiam opinion, the Supreme Court vacated the judgment of the Fourth Circuit and remanded the case to the district court for reconsideration. Toll v. Moreno (Toll II), 441 U.S. 458, 462, 99 S.Ct. 2044, 2046, 60 L.Ed.2d 354, 354-55 (1979). In the 1982 decision, Toll II, defendants argued the per curiam opinion, Toll I, had vacated the district court’s original order. Toll II, 458 U.S. at 17-18, 102 S.Ct. at 2986, 73 L.Ed.2d at 576-77. The Supreme Court rejected this argument, holding Toll I had “left the judgment of the District Court undisturbed.” Id. at 18, 102 S.Ct. at 2986, 73 L.Ed.2d at 577. The Supreme Court further stated, "contrary to petitioners’ suggestion, a vacatur of the District Court’s judgment was not necessary to give the District Court jurisdiction to reconsider the case.” Id. at 18, 102 S.Ct. at 2986-87, 73 L.Ed.2d at 577. Defendants in this case rely on this language in Toll II to argue Lee I reversed the district court’s ruling. As discussed above, we disagree and do not find Toll II supports defendants’ position. To the contrary, we agree with the Toll II Court's footnote commenting:
Even if we were to assume that the judgment of the District Court was indeed vacated, we could not say that the terms of tíre University's waiver of sovereign immunity- — -that the District Court’s order be "finally affirmed on appeal” — would not be satisfied. Petitioners have not prevailed on the merits in a single court, despite the numerous decisions that this litigation has prompted. By its original order, the District Court held that the University’s in-state policy was invalid insofar as it discriminated against G-4 aliens. Today, we reaffirm that conclusion.
Id-, at 19, 102 S.Ct. at 2987, 73 L.Ed.2d at 577 n. 27.