**IN THE COURT OF APPEALS OF IOWA**

No. 25-0658
Filed November 13, 2025

**IN RE THE MARRIAGE OF ELLEN M. CHICKERING
AND KURTIS G. CHICKERING**

**Upon the Petition of
ELLEN M. CHICKERING,**
        Petitioner-Appellee,

**And Concerning
KURTIS G. CHICKERING,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Wapello County, Dustin Hite, Judge.


        Kurtis Chickering appeals the district court's denial of his petition to modify the physical care provisions of his dissolution decree. **AFFIRMED AND REMANDED WITH INSTRUCTIONS.**


        Diana L. Miller of Whitfield & Eddy P.L.C., Mount Pleasant, and Sydnee M. Waggoner of Whitfield & Eddy P.L.C., Des Moines, for appellant.

        Heather M. Simplot of Harrison, Moreland, Webber, Simplot & Sieren, P.C., Ottumwa, for appellee.


        Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

Kurtis Chickering contends the district court erred by denying his petition to modify the physical care provisions of his dissolution decree, arguing that the relocation of his former wife, Ellen Chickering, constituted a substantial and unanticipated change in circumstances. He also argues that the district court miscalculated child support through improper income findings for both parties and that it improperly questioned the credibility of his testimony. He further contends the district court erred by failing to increase his parenting time.

## I. Background Facts and Proceedings

Ellen and Kurtis divorced in August 2023 following a stipulated decree that awarded joint legal custody of their two minor sons and placed the children in Ellen's physical care. Kurtis was granted parenting time every other weekend and one overnight each week. At the time of the divorce, Ellen lived in Batavia, Iowa, while Kurtis remained in Eldon.

In late 2023, Ellen moved with the children to Coatsville, Missouri, approximately an hour from the children's school in Eldon. She moved in with her boyfriend, James Nagel ("Clyde"), citing concerns over marijuana use by neighbors in her prior apartment. Ellen continued to transport the children to school in Eldon, where both parents agreed the children should remain enrolled.

Kurtis owns and operates TC Concrete, LLC, a family business in Eldon, and lives near his extended family. Ellen is employed at the Jefferson County Health Center in Fairfield, Iowa. Both parties have since entered new relationships—Kurtis with Kelsie Millard, a registered nurse, and Ellen with Clyde, who owns a tiling business.

The district court denied Kurtis's petition to modify physical care and granted Ellen's request to increase child support.  Despite Ellen's relocation, the court found no material and substantial change of circumstances had occurred.  Further, the district court found that Ellen's move to Missouri was reasonable under the circumstances and not detrimental to the children's welfare.  The district court commended Ellen's continued efforts to maintain the children's schooling, stability, and routines, and found her testimony credible.

The district court expressed concerns about Kurtis's credibility, particularly his denial that his girlfriend lived with him, despite testimony indicating she stayed at his home roughly half the time.  The court also determined that Kurtis's business deductions on his tax return included personal expenses and adjusted his income upward for child-support purposes.

Both parties moved to enlarge or amend the ruling.  Kurtis sought changes to factual findings, physical care, visitation, and child support; Ellen requested clarification concerning the children's passports.  The court denied both motions, reiterating that its credibility determinations and financial findings were supported by the record.  The court found that Kurtis never requested more visitation as alternative relief if he lost his request for physical care, and the court deemed Kurtis to have waived any claim for more visitation.

On appeal, Kurtis contends the district court erred in four respects: (1) denying his petition to modify physical care, (2) failing to conclude Ellen's relocation constituted a substantial and unanticipated change in circumstances; (3) discrediting his testimony concerning his living arrangements and overall

credibility; (4) failing to increase his parenting time; and (5) miscalculating child support through improper income findings for both parties.

Ellen maintains the court properly assessed credibility, correctly found there to be no material and substantial change in circumstances, and appropriately declined to revisit waived visitation claims, and accurately determined the parties' incomes and child support obligations.

## II.     Standard of Review

Appellate review of an equitable action to modify the physical-care or visitation provision of a custody decree is de novo.  *Christy v. Lenz*, 878 N.W.2d 461, 463 (Iowa Ct. App. 2016).  We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them.  *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 850 (Iowa 1995).  Issues of child support are reviewed de novo.  *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005).

## III.     Analysis

### A. Physical Care.

We first consider Kurtis's claim that the district court erred in declining to modify the physical care provisions of the dissolution decree.  The following principles apply to modification of the physical-care provisions of a dissolution decree:

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the [child's] best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the

welfare of the [child]. A parent seeking to take custody from the other must prove an ability to minister more effectively to the [child's] well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Here the district court found that after reviewing all the relevant factors, Kurtis failed in his burden to show a material and substantial change in circumstances that would justify changing the physical care provisions of the parties' dissolution decree. The court reasoned:

> Given that the children have remained in the same school, and their time with their father has remained the same, the only disadvantage that could be attributed to the move would be the travel time. In fact, that was the only real complaint that Kurtis ever expressed during trial. However, the evidence showed that the children were previously on the school bus for that same amount of time, the children were never late for school, and the children have made the trip safely for over a year.

We agree with the court's analysis. Ellen has continued to transport the children to school in Eldon, where both parents agreed the children should remain enrolled. The record reflects that the boys are healthy, perform well in school, and maintain strong relationships with both parents. And Ellen testified that once she is able to find a suitable home she plans to move back closer to the children's school. To that end she has been working with a realtor to achieve that task. Like the district court, we agree Ellen's one-hour move to Missouri is reasonable under the circumstances. Additionally, her continued efforts to maintain the children's schooling, stability, and routines, render the move not detrimental to the children's welfare.

The district court is typically in a better position to make credibility and factual findings. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989) (noting that determining witness credibility depends "not so much on what was said and done, as upon the implications of the words and actions of the parties" and thus, "a trial court, as first-hand observer of witnesses, holds a distinct advantage over an appellate court, which necessarily must rely on a cold transcript"); *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.' In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented." (internal citation omitted)). "A witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this 'nonverbal leakage.'" Thomas Sannito & Peter J. McGovern, *Courtroom Psychology for Trial Lawyers* 1 (1985). Thus, "the trial judge is in the best position to assess witnesses' interest in the trial, their motive, candor, bias, and prejudice." *Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa Ct. App. 2016).

> We concur with the district court's finding that it believed
>
> Ellen's testimony credible that she moved to get out of a bad situation. Kurtis received the family home following the divorce, leaving Ellen to find her own place to live. Despite receiving

$100,000 from the divorce settlement immediately, Ellen used that money to pay debts and for living expenses, leaving her without significant resources to buy a new home. Clyde offered to let Ellen and her children move in with him, and Ellen accepted the invitation.

And as to Kurtis's credibility, the district court stated as it relates to Kelsie moving in with him, "Kurtis continued to deny that Kelsie had moved in with him. However, Kelsie credibly testified that she spends at least 50% of her time, including overnights, at Kurtis's home. Kurtis's attempt to characterize Kelsie as anything other than a live-in girlfriend only leads the court to question his credibility." The district court simply found Kelsie to be a credible source as to her residency status in his home, discrediting Kurtis.

We find no error with the court's denial of Kurtis's request to modify physical care, its credibility findings, or the impact of the district court's credibility findings on its decision to not modify physical care, and will not disturb them.

### B. Visitation.

We turn to Kurtis's challenge that the court erred in not modifying his visitation provisions of the decree. In short, he asserts that because he requested modification of physical care, Ellen was on notice that modification of his visitation was in play and therefore the court's denial of his request to modify visitation for lack of authority was in error.

Kurtis's petition for modification, in relevant part, stated as follows:

> COMES NOW the Respondent, KURTIS G. CHICKERING ("Kurtis"), by and through his attorney of record, Diana L. Miller of Whitfield & Eddy, P.L.C., and hereby petitions the Court to modify the Decree of Dissolution of Marriage ("Decree") as to physical care, visitation, support *and other related matters.*
> . . . .
> 16. It is in the best interests of the minor children that the Court modify the physical care arrangement, visitation provisions, transportation

provisions *and other related provisions in the Decree*, in light of the foregoing change in circumstances.

. . . .

WHEREFORE, the Respondent, KURTIS G. CHICKERING, prays that the Court modify the Decree of Dissolution of Marriage in light of the foregoing changes in circumstance to award him primary physical care of the minor children; establish a visitation schedule for the Petitioner; modify the parties' child support and medical support obligations in accordance with their current financial circumstances, the Iowa Child Support Guidelines and the change in physical care; award Respondent a judgment against the Petitioner for the attorney fees and court costs incurred in bringing his action; *and for all further and additional relief the Court deems just and equitable.*

(Emphasis added.)

Kurtis also advances that he requested more visitation with his children both in his pre-trial "Statement of Request for Relief" as well as his testimony at trial. Specifically, relating to summer visitation, Kurtis's pre-trial "Statement of Request for Relief" stated that during the summer the parties "share physical care on alternating weeks." This was consistent with his trial testimony: "Q. And then what do you want to happen during the summer? A. 50/50 custody, week on, week off, so there wouldn't be so much travel time between us."

The district court, in denying Kurtis's motion to enlarge and reconsider on this issue stated:

If the court does not modify its ruling on [physical] care, then Kurtis requests the court modify his visitation to increase it. In Kurtis's petition to modify, he specifically states that he is requesting the court grant him physical care of the parties' minor child, but he did not request that in the event that he was not awarded primary care of the children, that his parenting time should be modified. In his statement of request for relief, Kurtis only requests the court award him [physical] care of the children, and he does not propose an alternate form of relief where his parenting time be increased. In his trial brief, Kurtis does not request an alternate form of relief whereby his parenting time is increased. For the first time in his motion to reconsider, Kurtis requests the court increase his parenting time.

The district court went on that it would "not speculate why Kurtis chose an all or nothing trial strategy, but he did. The court cannot and will not consider an issue that was not raised, was not tried, and for which the petitioner had no notice that Kurtis was claiming."

Three of our prior decisions analyze this notice issue relative to the district court's authority. The first is *In re Marriage of Hute*, a case in which a modification applicant requested mere modification of visitation, not legal custody or physical care. *See* No. 17-0046, 2017 WL 3283382, at *3 (Iowa Ct. App. Aug. 2, 2017). However, the district court ultimately modified legal custody. *Id.* at *1. We concluded "[t]he parties were not given notice that custody was at issue" and, "[u]nder the circumstances, sua sponte modification of the custodial provisions of the decree was not proper." *Id.* at *3.

However, we distinguished *Hute* in a second case, *In re Marriage of Seward*, whereby the father specifically requested modification of physical care and broadly requested the court to "enter such orders" as to "other matters appropriate under the circumstances." No. 18-1690, 2019 WL 1934002, at *1 (Iowa Ct. App. May 1, 2019). The court denied the request for modification of physical care but modified visitation. *Id.* at *2. The district court denied the mother's argument in her motion to reconsider, enlarge, or amend that it impermissibly modified visitation, because that issue was not before it. *See id.* at *2. When the argument was echoed on appeal, we concluded the mother "had fair notice the visitation provision was potentially at issue given the modification petition's broadly worded prayer," which "permitted the court to modify 'other

matters appropriate under the circumstances,' which would include the visitation provision of the decree." *Id.*

More recently, in *Crank v. Winters*, Winters broadly requested modification of "other and further" matters "the court deems appropriate." No. 19-0724, 2020 WL 1310341, at *5 (Iowa Ct. App. March 18, 2020). Crank argued that when Winters was under direct examination, she testified that she was not seeking a mere modification of visitation but a modification of physical care. *See id.* Crank contended that he was therefore never put on notice of the request for a modification of visitation. *Id.* We did not find such to be dispositive, reasoning that while it makes sense to not provide relief beyond what is requested, the proceeding was "unquestionably and obviously driven by [Winters]'s desire to have more time with the child" and that "[a]n award of physical care would have effectuated that desire, as does a lesser award of expanded visitation." *Id.*

We held that "while [Winters] specifically requested modification of physical care but did not make a specific prayer for modification of visitation, we liberally construe her prayer for general equitable relief to include a request for modification of visitation, as the petition and evidence fairly conform to that relief." *Id.* (citing *Lee v. State*, 844 N.W.2d 668, 679 (Iowa 2014)). We concluded that "interpreting [Winters's] testimony as all or nothing is simply illogical given the overarching theme of the proceedings—[Winters]'s desire to have more time with the child." *Id.*

But we can easily distinguish between *Seward* and *Winters* and the case at hand. Unlike the district court here, the district courts in *Seward* and *Winters* chose to grant lesser relief—e.g., granting greater visitation rights when modification of physical care was requested—even when that lesser relief was not directly

requested by the parties. But here, the district court chose *not* to grant lesser relief that was not directly requested for or argued. And while our case law shows that the district may consider granting lesser relief that is encompassed by the petitioner's modification request, our case law also does not require the district court to do so.

The district court felt it was not in a position to modify the visitation provisions due to Kurtis's "all or nothing trial strategy." Indeed, Kurtis only made vague requests for "additional relief the Court deems just and equitable," and even his request for 50/50 summer visitation was made under the expectation that he would be receiving physical care. Even in his motion to enlarge, Kurtis made no specific request for his preferred visitation schedule, stating only that his "visitation should be increased."

We cannot hold that burden was on the district court to fashion relief from whole cloth that was never directly requested or argued. If, following its refusal to modify physical care, the district court finds the circumstances warrant modification of the visitation provisions despite such relief not being directly requested, it has the power—but not the obligation—to do so. Kurtis's all-or-nothing trial strategy is a legitimate strategy, and he cannot now renege on that choice after it was unsuccessful. We find no error in the district court's refusal to modify the visitation schedule.

### C. Child Support.

Ellen requested a modification of Kurtis's child support obligation based on an increase in Kurtis's income. The parties disputed the amount of Kurtis's income. Iowa Code section 598.21C(2)(a) (2024) dictates that "a substantial

change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines" and warrants modification of child support.

The district court expressly made credibility determinations relative to Kurtis's actual earnings. "Given Kurtis's testimony regarding deductions he took on his [tax] return which he should not have taken, this court has serious doubts as to Kurtis's overall credibility and his accuracy in reporting his income on his returns . . . . The court finds that Kurtis's income from TC Concrete is $175,772." The district court then ordered Kurtis to pay Ellen child support at the rate of $2014.44 per month. We defer to the district court's credibility determinations and see no reason to extensively rehash how the district court arrived at this figure. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989); *In re Marriage of Wheeler*, No. 191268, 2020 WL 4201000, at *4 (Iowa Ct. App. July 22, 2020) (upholding child support determination stating an "argument about the correct formula is inapposite" when the court determined that someone has underreported or not been credible on their financial documents).

Kurtis claims the court erred by inaccurately calculating his child support by imputing additional income to him not supported by the record or evidence. Kurtis maintains the court failed to account for legitimate business expenses and deductions available to him when it reviewed his tax returns. In considering a party's income, the court must consider all circumstances relating to that party's income. *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). As a whole, the parties' income must be determined from the most reliable evidence presented. *Id.*; *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999) ("In calculating

child support, the first step is to determine the parents' current monthly net income from the most reliable evidence presented.").

We recognize that determining income for self-employed individuals may be difficult. And we recognize in cases involving physical care and visitation, it is sometimes necessary in the time restraints at trial for counsel to devote less time to making a record on financial issues and more time on issues concerning physical care and visitation. In some cases, it is appropriate to increase income by the amounts a court determines were taken from the business for personal use but claimed as expenses. *In re Marriage of McKamey*, 522 N.W.2d 95, 98-99 (Iowa Ct. App. 1994) (concluding that district court properly increased self-employed husband's income by amounts used for personal use but claimed as business expenses). Under this record, we decline to disturb the district court's determination of Kurtis's income for child support purposes.

### D. Appellate Attorney Fees.

Finally, we address Ellen's request for appellate attorney fees. Iowa Code section 598.36 permits an award of "attorney fees to the prevailing party in an amount deemed reasonable by the court" in "a proceeding for the modification of [a] . . . decree." "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). "In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). After consideration of these factors, we award Ellen appellate attorney fees. However, because Ellen did not submit an

attorney fee affidavit or request a specific fee award, we remand to the district court only to determine the reasonable amount of the appellate attorney fee award. *See In re Marriage of Samuels*, 15 N.W.3d 801, 808–09 (Iowa Ct. App. 2024).

## IV.    Conclusion

We therefore affirm the district court's credibility determinations, determination of the parties' income, denial of Kurtis's petition to modify, as well as its denial of Kurtis's request for increased visitation through his motion to enlarge. But we remand to the district court to award Ellen appellate attorney fees in an amount it deems reasonable.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**