In the Matter of the GUARDIANSHIP OF Angela Dawn STEWART, A Minor,

and Concerning

Lawrence L. Shepard and Helen R. Shepard, Appellants,

and

William S. Stewart, Appellee.

No. 84–1833.

Supreme Court of Iowa.

June 19, 1985.

Thomas M. Walter of Johnson, Bauerle, Hester & Walter, Ottumwa, for appellants.

Patrick F. Curran of Vinyard & Curran, Ottumwa, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

WOLLE, Justice.

Nine year old Angela Dawn Stewart (Angela) has been blessed with a father and grandparents who have demonstrated loving concern for her best interest. Since infancy Angela has lived with her maternal grandparents. Her mother left the child's father and has shown little interest in her welfare. When Angela was just one year old her father agreed that the grandparents should be appointed guardians because they could then best minister to her needs. This appeal concerns the father's

resisted application to terminate the guardianship. The trial court granted the application and provided that the father should have custody of Angela subject to the grandparents' right to exercise reasonable visitation. The grandparents contend that the trial court erred (1) in refusing to place on the father the burden to prove that the guardianship should be terminated, and (2) in concluding that the father should have custody of Angela. We affirm.

## I. *Background Facts.*

■ This matter was properly tried in probate as a proceeding in equity. Iowa Code § 633.33 (1983). Our review is de novo. *In re Guardianship of Sams,* 256 N.W.2d 570, 572 (Iowa 1977). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

William S. Stewart and Jill Shepard were married when she was a sophomore and he had just graduated from high school. Their only child Angela was born on December 7, 1976. William, Jill and Angela initially resided in Ottumwa with Jill's parents, Lawrence L. Shepard and Helen R. Shepard (Shepards). By November of 1977 Jill had left William, both had moved out of the Shepards' home, and William and the Shepards together went to a lawyer who suggested that the Shepards be appointed as guardians. The Shepards have had custody of Angela since entry of a district court order and issuance of letters of guardianship on December 12, 1977. The Shepards have taken excellent care of Angela and provided her with a warm and loving home.

William and Jill were unable to reconcile their marital difficulties. A decree of dissolution entered in October of 1979 granted William custody of Angela. The Shepards were not parties to that dissolution action, and William does not contend that the dissolution decree affected the guardians' rights and responsibilities as custodians. Jill remarried, left the state, and has shown no interest in the outcome of this appeal.

William worked full time for a grocery chain until January of 1980 when he enlisted in the United States Air Force. Both before and after joining the air force, William had regularly visited Angela. As a part of the original guardianship proceeding he agreed to make child support payments of $100 per month, and he has made those payments regularly since sometime in 1980. In December of 1980 William asked the Shepards to relinquish custody of Angela to him. Their refusal led William to file on June 23, 1981, an application for termination of the guardianship.

Although the hearing on William's application was not held until October 25, 1984, the parties do not contend that the hearing was unreasonably delayed. William was assigned to an air force base in Italy during much of 1982 and part of 1983. After his return to an air force base at Abilene, Texas where he is presently assigned, the parties stipulated that William should have visitation with Angela for about eight weeks in the summer of 1984 in order that they could better develop their father-daughter relationship. The court granted the parties' request that the hearing be postponed until after that visitation had been completed.

At the time of hearing the evidence disclosed that William was 26 years of age. He was engaged to be married on April 20, 1985 to Diane M. Rieger, 27 years of age, a member of the air force also assigned to the air force base at Abilene. William was serving as a liaison person between the air force and a private communications firm, inspecting telephone installations. He plans to complete twenty years of service in the air force to qualify for a military pension, but he may separate from military service in 1988 if he can obtain satisfactory employment in the communications industry.

## II. *Burden of Proof.*

The Shepards contend that the trial court should have placed on William the burden to prove that the circumstances mandated a transfer of custody. We disagree.

In its conclusions of law the trial court wrote:

> In child custody disputes, the determinative factor is the best interest of the child. The rebuttable presumption favoring the natural parents [Iowa Code section 633.559] applies in this case. The burden was on Larry and Helen Shepard to establish that the best interest of Angela required their [guardianship] of her be continued. While a strong argument could be made that it may be in Angela's best interest to remain with the Shepards at the present time, the Court must base its decision not only on what the best interest of Angela is at this time but also her best *long range* interest in the future.

(Emphasis in original.) The court relied on and quoted from *In re Guardianship of Sams*, 256 N.W.2d 570 (Iowa 1977), where we terminated a guardianship and transferred custody of a minor child from a grandparent to the natural parent. We there placed on the guardian the burden to establish that the best interest of the children required continuation of the guardianship in view of the rebuttable presumption favoring natural parents. We said:

> Our cases have emphasized that parents should be encouraged in time of need to look for help in caring for their children without risking loss of custody. The presumption preferring parental custody is not overcome by a mere showing that such assistance was obtained. Nor is it overcome by showing that those who provided the assistance love the children and would provide them with a good home. These circumstances are not alone sufficient to overcome the preference for parental custody.

*Id.* at 573; *accord Matter of Burney*, 259 N.W.2d 322, 324 (Iowa 1977).

The Shepards contend that we placed the burden of proof on the guardian in *Sams* only because the natural parent had not received notice of the proceedings in which the grandparent was appointed guardian. They argue that William here agreed to the order appointing them as guardians, and

that order erased the parental preference on which the burden of proof was based. We recognize that the facts in *Sams* are different in that respect, but we hold that William did not relinquish his presumptive right to custody when he agreed that the Shepards should be appointed as guardians for Angela.

The evidence here clearly established that the guardianship was intended to be a temporary and not a permanent custodial arrangement. William testified that at the time Shepards were appointed as guardians, he was not prepared economically, physically or emotionally to take care of his one year old daughter by himself and fully intended "down the road" to "take her into my own home." Mrs. Shepard explained:

> Well, since our daughter was the one that pulled out of the marriage we were very upset with her, and we were very much concerned that she might take Angela with her and a very questionable environment and we thought it was important that Bill should have custody of Angela for her protection from being taken by Jill, and so we took him to a lawyer and we worked out this agreement. It was actually the lawyer's suggestion about Angela. We hadn't even thought about it.

We have held that a parent who has taken "an extended holiday from the responsibilities of parenthood" may not take advantage of the parental preference for custody. *See Carrere v. Prunty*, 257 Iowa 525, 531–32, 133 N.W.2d 692, 696 (1965); *In re Guardianship of Plucar*, 247 Iowa 394, 402–03, 72 N.W.2d 455, 460–61 (1955). But William certainly never abandoned his daughter. He kept in close touch with the Shepards, provided regular financial support, and frequently visited Angela. He requested termination of the guardianship when he believed he was ready to take care of her just three years after the guardianship had been set up.

This case is not like those cited by the Shepards in which parental preference was not a factor because a prior custody determination had involved a full evidentia-

ry hearing and finding that the parental preference had been overcome. *See, e.g., Alingh v. Alingh,* 259 Iowa 219, 226, 144 N.W.2d 134, 139 (1966) (court in second habeas corpus action need not consider parental preference where earlier habeas corpus decree fixed custody in grandparents); *Thein v. Squires,* 250 Iowa 1149, 1157–58, 97 N.W.2d 156, 162 (1959) (denying mother's application to modify prior habeas corpus decrees, stating: "It is to be assumed the court knew and respected the presumption referred to in arriving at these earlier decrees."). The Shepards and William had not initially disagreed about who should have custody of Angela, and no court had previously been required to resolve a custody dispute by balancing the parental preference favoring William against other pertinent factors. The agreed order appointing the Shepards as guardians was not the equivalent of a final dissolution or other decree looking to the long-term best interest of the child. The order was more akin to an agreed order for temporary custody entered during the pendency of dissolution proceedings. Such an order is superceded by the more permanent dissolution decree itself. Similarly, persons who procure and accept an appointment as guardian of a minor child are subject to the control and supervision of the court as the superior guardian. *In re Guardianship of Ankeney,* 360 N.W.2d 733, 736 (Iowa 1985). An involuntary guardianship would eliminate the parental preference from later consideration only if the relative custodial rights of the proposed guardian and the parent were put in issue and tried in the guardianship proceeding. *See* 39 Am.Jur.2d *Guardian and Ward* § 66 (1968).

■ The trial court properly placed on the Shepards the burden to overcome the parental preference and show that the best interest of Angela required continuation of the guardianship.

### III. *Custody of Angela.*

■ The Shepards also contend that they should retain custody of Angela because the evidence was sufficient to overcome the statutory presumption in Iowa Code section 633.559 (1983) preferring parental custody. As in all child custody matters the first and governing consideration must be the best interest of the affected child. Iowa R.App.P. 14(f)(15). General factors to be considered are listed in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). The presumption of parental preference which must also be considered in this case is more fully explained in *Doan Thi Hoang Anh v. Nelson,* 245 N.W.2d 511, 517 (Iowa 1976).

The trial court in its detailed and well-reasoned opinion emphasized that it had observed the conduct and demeanor of the parties and witnesses in an effort to determine what is in the best interest of Angela. It noted:

> The Court was very impressed with the warmth that [William] projected while testifying. He appears to be a clean-cut intelligent and articulate young man and seems eager to develop a much stronger father-daughter relationship with Angela. [William] testified that while he deeply appreciated the fact that the Shepards were willing to take care of Angela during the time that neither he nor his former wife were able to do so, he now believes it would be in Angela's best interest to be with him.

The trial court concluded:

> [I]n considering the long-range best interest of Angela, it is the belief of the Court that her best interest will be served by returning her custody to her father.

We pay close attention to the credibility findings of the trial court because it had the opportunity to observe and listen to the parties and other witnesses, including the minor child. *See In re Marriage of Vrban,* 359 N.W.2d 420, 423 (Iowa 1984).

■ We need not elaborate on all of the factors which the trial court and we have considered in deciding what custodial arrangement will serve Angela's long-term best interest. The Shepards have fulfilled their role of substitute parents in exemplary fashion, providing well for Angela's so-

cial, emotional, physical and moral needs. We recognize that continuation of the guardianship would provide Angela continuity and stability in a familiar setting which a change of custody may disrupt. The advantage of stability provided by continuation of the guardianship must be weighed against the benefit Angela will receive from living with her father. We agree with the trial court's finding that Angela will benefit considerably by developing "a strong, warm father-daughter relationship" with William. Like the trial court, we are impressed with William's demonstrated interest in Angela's welfare and his sincere appreciation for how well the Shepards have cared for her during these past eight years. William is a fit and suitable parent who can now and in the future provide a very good home for his daughter. Two good homes are available to Angela. On balance, however, we agree with the trial court that she should now live with her father. She will have the opportunity to maintain close contacts with her extended family during regular periods of visitation with the Shepards.

AFFIRMED.