In the Matter of the GUARDIANSHIP OF Kylie Jeanne ROACH,

Chris Blackburn and Sue Ann Blackburn, Guardians–Appellants.

No. 09–0670.

Court of Appeals of Iowa.

Dec. 30, 2009.

Vicki Copeland, Jefferson, for appellants.

Brooke Blackburn, Adel, appellee pro se.

Considered by VOGEL, P.J., and DOYLE and MANSFIELD, JJ.

VOGEL, P.J.

The guardians appeal the order terminating the guardianship of K.R., asserting the district court applied the wrong burden of proof. We reverse.

## I. Background Facts and Proceedings.

K.R., born in May 2002, is the daughter of Brooke Blackburn and Nick Roach. The couple never married and K.R. has been in the care of Brooke's father, Chris Blackburn and his wife, Sue Ann Blackburn, essentially since her birth, but exclusively since December 2003. On September 20, 2004, with the consent of both Brooke and Nick, the district court appointed Chris and Sue Ann as guardians of K.R.

On August 25, 2006, Brooke petitioned the court to terminate the guardianship. Trial was held on the issue on May 9, 2007, after which the court issued a detailed ruling, finding the guardianship should not be terminated. On March 24, 2008, Brooke again sought to terminate the guardianship.[1] Hearing on her application was held on January 22, 2009, and on April 1, 2009, the district court ruled the guardianship should terminate effective May 15, 2009. On the guardians' motion to enlarge and amend, the court delayed termination until June 13, 2009. It is from these orders the guardians now appeal, asserting the district court applied the wrong burden of proof.

## II. Scope of Review.

We review this guardianship proceeding de novo. Iowa R.App. P. 6.907 (2009); Iowa Code § 633.33 (2007); *In re Guardianship of B.J.P.*, 613 N.W.2d 670, 672 (Iowa 2000).

## III. Burden of Proof.

The district court was persuaded that if Brooke made a *prima facie* showing of suitability as a parent, the burden to go

---

1. Iowa Code section 633.680 provides:
   If any petition for terminating such guardianship or conservatorship shall be denied, no other petition shall be filed therefor until at least six months shall have elapsed since the denial of the former one.

forward would be on the guardians to prove Brooke was unsuitable. It ultimately concluded "the guardians have failed to establish by clear and convincing evidence that Brooke is not a suitable parent."

We begin our analysis by reciting the most fundamental principle, that our primary consideration is the best interests of the child, K.R. *In re Guardianship of Knell,* 537 N.W.2d 778, 780 (Iowa 1995). Losing focus of this overarching premise would defeat the central purpose of litigating the custody of the child. It is not a strong-arm contest of the adults involved, but a review of the factors that will best serve K.R.'s immediate and long-term needs. *Id.* at 781 (citing *In re Guardianship of Sams,* 256 N.W.2d 570, 573 (Iowa 1977)). In considering the best interests of the child, Iowa Code section 633.559 creates a presumptive preference of parental custody, providing in relevant part: "The parents of a minor, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." The presumption stems from the strong societal interest in preserving the natural parent-child relationship. *Zvorak v. Beireis,* 519 N.W.2d 87, 89 (Iowa 1994). However, this presumption is not immutable, but is rebuttable. *Carrere v. Prunty,* 257 Iowa 525, 531–32, 133 N.W.2d 692, 696 (1965) ("[Statutes] giving preference to parents in custody cases[ ] do not provide for an absolute right in the parent but only a presumptive right which must give way where it has been relinquished or where the welfare and best interest of the child call for other custody.") Further, in determining what is in a child's best interests we can look to a parent's past performance because it may be indicative of the quality of the future care that parent is capable of providing. *See Alingh v. Alingh,* 259 Iowa 219, 226, 144 N.W.2d 134, 139 (1966) (look-

ing to past performance to determine the quality of care the children will receive in the future); *see also In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981).

In the 2007 trial, the district court found the guardians had carried their burden of proof, rebutting the presumption favoring K.R.'s natural parent, her mother. However, less than one year later, Brooke again sought to terminate the guardianship. This time, another district court judge, still applying the presumption for parental preference, determined the guardians did not carry their burden of proof to rebut the presumption, and terminated the guardianship. This ruling led to the current appeal, and the guardians' assertion that once the presumption had been rebutted in a fully litigated prior proceeding, the presumption of parental preference carries less weight, or may not even prevail in a subsequent proceeding. Instead, they assert the court should consider whether the parent can demonstrate a substantial change of circumstances since the last finding to warrant, as in this case, terminating the guardianship.[2]

The guardians find support for their assertion in our case law. Several decades ago, in the case of *Thein v. Squires,* our supreme court placed the burden of proof on the natural parent (the mother) to prove that she had rehabilitated herself since the last finding. 250 Iowa 1149, 1156, 97 N.W.2d 156, 161 (1959) ("The burden rested upon [the mother] to show that because of what has happened since [the first habeas corpus trial] the welfare of the children will be best served by taking them from [the guardians] and placing them with [the mother]."); *see also Alingh,* 259 Iowa at 226, 144 N.W.2d at 139 ("This presumption [in favor of the natural parent] is resorted to merely to aid the court in determining what is in the

---

**2.** Brooke did not file a brief in this appeal.

best interests of the child. This presumption does not prevail where there has been a prior custody decree. In such cases the presumption is in favor of the prior decree."). This was the burden of proof notwithstanding the previous order reserving jurisdiction to make further orders should the welfare of the children be shown to be otherwise. *Thein,* 250 Iowa at 1156, 97 N.W.2d at 161.

We agree with the guardians that once a finding has been made in a previously litigated action, rebutting the presumption in favor of the natural parent, the burden of proof changes such that the natural parent must prove a substantial change of circumstances, warranting a change of custody. *Id.* "An involuntary guardianship would eliminate the parental preference from later consideration only if the relative custodial rights of the proposed guardian and the parent were put in issue and tried in the guardianship proceeding." *In re Guardianship of Stewart,* 369 N.W.2d 820, 824 (Iowa 1985) (citing 39 Am. Jur. 2d *Guardian and Ward* § 66 (1968)). Assigning this burden of proof in a subsequent proceeding is not to undermine fundamental parental rights, but rather to protect the child whose interests we are bound to serve. *See Thein,* 250 Iowa at 1156, 97 N.W.2d at 161 (stating that a guardianship case, being a child custody determination, draws from the same child custody principles enumerated in dissolution of marriage cases); *see also Knell,* 537 N.W.2d at 780–81 (same); *In re Marriage of Downing,* 432 N.W.2d 692, 693–94 (Iowa Ct.App.1988) (stating that because our paramount consideration in determining custody is the best interests of the children, the moving party carries a heavy burden when seeking a change in custodial provisions).

To change a custodial provision, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so changed that the child's best interests make it expedient to make the requested change. *Alingh,* 259 Iowa at 226, 144 N.W.2d at 139 ("We have repeatedly held ... that where as here there has been a previous custody decree the burden is upon one seeking a change to show a change in conditions."). Once custody has been fixed, it should only be disturbed for the most cogent of reasons. *Id.; Thein,* 250 Iowa at 1158, 97 N.W.2d at 162. Moreover, a parent who has taken "an extended holiday from the responsibilities of parenthood" may not take advantage of the parental preference for custody. *See Carrere,* 257 Iowa at 532, 133 N.W.2d at 696.

Here, Brooke was given the full opportunity to litigate her petition to terminate the guardianship in May 2007, aided with the presumption of placement with her, yet she was unable to prove she could adequately care for K.R., such that the guardianship should be terminated. Therefore, any further petitions filed by Brooke to terminate the guardianship must demonstrate by clear and convincing evidence that a substantial change of circumstances has occurred, warranting the requested change. On our de novo review, we conclude had the burden been properly placed on Brooke, she would not have been able to prove a substantial change of circumstances since the May 2007 order.

At the time of the 2007 ruling, Brooke was living with her boyfriend, Kyle Ferguson, and the couple's daughter, L.F., born in December 2006. Brooke lacked a valid driver's license, but drove her car in spite of that deficit. Kyle had an Interlock Device installed on his vehicle, stemming from past drug and alcohol convictions and was only allowed to drive to and from work, although he too drove elsewhere, as

needed. Brooke was unemployed and completely dependent upon Kyle for support. The court found neither Brooke nor Kyle had appropriately addressed the "monumental personal and financial problems that they both face," and the difficult transition K.R. would face, were she uprooted from the only family she had known and placed into a new environment.

Since that ruling was made, Brooke and Kyle have continued their relationship, residing together with L.F. Brooke has been employed one night per week at a restaurant and full time for about six months at Iowa Wireless, and now has a valid driver's license. However, Brooke still has issues with substance abuse. When she was fifteen years old, Brooke began using illegal drugs (cocaine, methamphetamine, marijuana) and alcohol, and has been in and out of various treatment programs. Just after filing this second application to terminate the guardianship, she was arrested for public intoxication, with a blood alcohol content of .24. Following her guilty plea, Brook was ordered to participate in a treatment program, to which she complied as an outpatient for five or six weeks in the summer of 2008. Although her discharge plan recommended she abstain from further alcohol use, Brooke continued to consume alcohol on a semi-regular basis. Kyle testified he had seen her drinking at least ten times since her most recent alcohol-related conviction. Brooke testified she had completely abstained from alcohol use, but backed off that position on cross-examination. She also testified she has been on Paxil for depression and anxiety issues since November 2007.

The guardians and K.R. live in Jefferson; Brooke and Kyle live in Ames. Brooke has visitation with K.R. every other weekend, but is unable to consistently take advantage of the visitation because of her weekend work schedule or because she has other plans. The guardians acknowledge it is not easy for Brooke and in no way are attempting to limit Brooke's contact with K.R. In addition, the guardians arrange for K.R. to visit with her natural father, who lives in Ankeny, on the opposite weekends. Brooke testified favorably about the guardians and the excellent care and nurturing they have unselfishly given K.R. The district court found, "There is no question but that the guardians have provided [K.R.] with a loving and stable environment ... There is a very strong bond between Sue Ann and [K.R.]."

■ Perhaps the most unsettling testimony was Brooke's admitted lack of involvement in K.R.'s life, in spite of the guardians' willingness and attempts to keep Brooke informed of K.R.'s activities, schooling, health, and wellbeing. Brooke repeatedly testified that she has not taken any affirmative steps to inquire about K.R.'s daily life, and acknowledged the guardians "are receptive" to her involvement, and that the lack of initiative fell on her shoulders. Although Brooke has made some progress in stabilizing her life, both in terms of her relationship with Kyle and in her employment efforts, she has not carried her burden to prove a substantial change of circumstances that would warrant destabilizing K.R. by uprooting her from the only home she has known and breaking the strong bond she has with her guardians.

> The passage of time, under the circumstances of this case, carries considerable weight in our determination. A parent who fails to develop a relationship with his or her child while that child is establishing a family relationship with a [guardian] must recognize the child thereby puts down roots that are of critical importance. Courts must care-

fully deal with those roots in determining the child's best interest.

*See Knell,* 537 N.W.2d at 778.

We find the district court applied the wrong burden of proof. The court should have determined whether Brooke proved a substantial change of circumstances since the last order in 2007. *See In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983); *Thein,* 250 Iowa at 1156, 97 N.W.2d at 161. On our de novo review, we find the record does not support a substantial change of circumstances, and without that showing, the best interests of K.R. are to keep the guardianship in place. We therefore reverse the decision of the district court.

**REVERSED.**