# IN THE COURT OF APPEALS OF IOWA

No. 3-1254 / 13-0945
Filed February 19, 2014

**IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF J.M.M. AND A.D.M.,**

**Joseph and Shirley Cox, Temporary Guardians
and Conservators,**
　　　Appellants.

_____

　　　Appeal from the Iowa District Court for Pottawattamie County, Timothy O'Grady, Judge.

　　　Paternal grandparents appeal an order denying their application for appointment of a guardianship and conservatorship over two grandchildren. **AFFIRMED.**

　　　Suellen Overton of Overton Law Office, Council Bluffs, for appellants.

　　　Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**VAITHESWARAN, J.**

Joseph and Shirley Cox, paternal grandparents of two children, appeal an order denying their application for appointment of a guardianship and conservatorship over the children.

## I.    *Background Facts and Proceedings*

Wayne and Bonnie had two children, born in 2000 and 2002. The couple divorced in 2003, and Wayne was granted physical care of the children. Wayne raised the children for the ensuing nine years. Bonnie visited them on occasion but maintained that Wayne thwarted regular contact.

Wayne died in 2012, and shortly thereafter, his parents applied to serve as the children's guardians and conservators. Bonnie resisted the application and sought custody of the children. Following an evidentiary hearing, the district court appointed the Coxes temporary guardians and conservators and scheduled an evidentiary review hearing to determine whether the guardianship "should terminate and the children be placed in Bonnie's care, or . . . become permanent."

After the second hearing, the court denied the Coxes' application, terminated the "temporary guardianship and temporary conservatorship . . . at the end of the present school term," and ordered "full legal custody and physical care" of the children transferred to Bonnie. The Coxes appealed.

## II.    *Analysis*

The Coxes contend "Bonnie's unilateral decision to jump back into these children's lives after ten years is not a basis to remove these children from the loving grandparents that helped raise them." Our review is for errors of law. *See*

Iowa Code § 633.33 (2011); *In re Guardianship of M.D.*, 797 N.W.2d 121, 126-27 (Iowa Ct. App. 2011) (noting conflicting case law and opting for statutory directive). "We will affirm if there is substantial evidence in the record demonstrating that the best interests of the children favors dismissing the petitions for guardianship." *In re Guardianship of G.G.*, 799 N.W.2d 549, 551 (Iowa Ct. App. 2011).

As a preliminary matter, we must address the Coxes' assertion that the district court incorrectly assigned the burden of proof. The legislature has stated that "the parents of a minor, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." Iowa Code § 633.559. The non-parent bears the burden to overcome the parental preference with clear and convincing evidence that the natural parent is not a qualified or suitable caregiver. *M.D.*, 797 N.W.2d at 127.

The Coxes maintain they rebutted the presumption at the temporary hearing and the district court improperly required them to do so again at the permanent hearing. They cite *In re Guardianship of Roach*, 778 N.W.2d 212, 215 (Iowa Ct. App. 2009), for the proposition that "once a finding has been made in a previously litigated action, rebutting the presumption in favor of the natural parent, the burden of proof changes such that the natural parent must prove a substantial change of circumstances, warranting a change of custody." In their view, the district court should have shifted the burden of proof to Bonnie at the permanent hearing.

*Roach* states that the burden shifts to the parent only after a finding of parental unsuitability is made "in a previously litigated action" where "the relative

custodial rights of the proposed guardian and the parent were put in issue and tried in the guardianship proceeding." *Id.* That is not what happened here. The district court held a temporary hearing after which the court "temporarily appointed the Coxes guardians and conservators" to "allow time for bonds to develop between Bonnie and the children."

We recognize that the temporary order contained a finding that the Coxes "rebutted the parental preference of section 633.559," a finding that was made following an evidentiary hearing at which Bonnie's suitability as a parent was put in issue. The fact remained, however, that the order was not permanent. *See In re Guardianship of Stewart*, 369 N.W.2d 820, 823-24 (Iowa 1985) (declining to shift burden where "[t]he evidence here clearly established that the guardianship was intended to be a temporary and not a permanent custodial arrangement" and "[s]uch an order is superseded by the more permanent dissolution decree itself"). Because the order was temporary, the burden did not shift to Bonnie.

Turning to the merits, there is much to commend the Coxes as permanent guardians and conservators, including Wayne's testamentary preference to have them serve as permanent caretakers, the mother's near absence from the children's lives for close to a decade, and the Coxes' consistent and active involvement in the children's lives. But "[r]ecognition that the non-parental party is an excellent parent to the child will rarely be strong enough to interfere with the natural rights of the parent." *Northland v. Starr*, 581 N.W.2d 210, 213 (Iowa Ct. App. 1998).

The district court determined that Bonnie was "qualified and suitable to be a parent and guardian" of the children. The court pointed to the fact that she had

abandoned certain "chaotic life choices" of the past, was "financially stable," "sober," involved in a long-term relationship, and had successfully parented an older child through his graduation from high school. The court noted that, after the temporary guardianship order was filed, Bonnie improved her bond with the children and "actively cared for the children's needs during her weekend visits." The court gave little weight to counselors' assertions that the children did not wish to move, reasoning that the Coxes were "the sole sources of information regarding the children and their history."

The district court's findings are supported by substantial evidence. The grandparents did not dispute that Bonnie had moved beyond the years of "chaotic life choices." While Shirley Cox expressed skepticism about Bonnie's weekend care of the children, Bonnie testified that those visits went well. It was the district court's prerogative to credit her testimony over Ms. Cox's version of events. *In re Conservatorship of Deremiah*, 477 N.W.2d 691, 693 (Iowa Ct. App. 1991). For the same reason, the court's dismissal of the counselors' recommendations was well within its purview. Significantly, Bonnie did not blame the Coxes or the counselors for excluding her from the counseling sessions and expressed an intent to continue those sessions for "[h]owever long [the counselors] felt was necessary." She also stated she would meet the children's future emotional needs through any transition periods "[b]y being there for them." In short, she acted in the children's best interests.

We conclude the Coxes failed to rebut the presumption in favor of the natural parent. Because substantial evidence supports the district court's determination that Bonnie was "qualified and suitable to parent her children," as

well as the supporting findings of fact, we affirm the district court's denial of the Coxes' application for appointment of permanent guardians and conservators and the termination of the temporary guardianship and conservatorship.

**AFFIRMED.**

Potterfield, J., concurs; Danilson, C.J., concurs specially.

**DANILSON, C.J.** (concurring specially)

I concur specially to commend the grandparents and acknowledge how fortunate the children are to have grandparents who are willing to provide their care, and to acknowledge the difficulty in reaching the decision in this appeal.

Our supreme court has long held in cases involving grandparents and a natural parent, "as always, the primary consideration is the best interest of the child and if the return of custody to the [parent] is likely to have a seriously disrupting and disturbing effect upon the child's development, this fact must prevail." *Painter v. Bannister*, 140 N.W.2d 152, 156 (Iowa 1966). Here, the mother essentially abandoned the children but has now made significant life changes and has stepped forward to assume parental responsibilities. She seeks a second chance and appears capable of the responsibilities. During the temporary proceedings in this action, the mother made efforts to re-unite with the children. The children have suffered from the loss of their father and will be required to face adjustment no matter the outcome of this proceeding. There is a mutual bond between the grandparents and the children that appears to be a positive force in the children's lives. Efforts to foster the relationship with the grandparents are in the children's best interests. I concur only because of the parental preference prescribed by our law.