# IN THE COURT OF APPEALS OF IOWA

No. 18-0861
Filed May 15, 2019

**IN THE MATTER OF THE GUARDIANSHIP OF I.P. and K.P.,**

**R.G.,**
   Petitioner-Appellant,

**vs.**

**D.K.,**
   Respondent-Appellee.

_____

   Appeal from the Iowa District Court for Marshall County, James C. Ellefson,

Judge.

   A grandmother appeals the dismissal of her petitions for guardianship of her

two grandchildren. **AFFIRMED.**

   Melissa A. Nine of Nine Law Office, Marshalltown, for appellant.

   Scott D. Fisher, Waukee, for appellee.

   Considered by Doyle, P.J., Mullins, J., and Gamble, S.J.*

   *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**GAMBLE, Senior Judge.**

Rhonda Gonzalez appeals the dismissal of her petitions for guardianship of her two grandsons, I.P. and K.P. On appeal, Gonzalez argues the district court erred in dismissing her petitions because it did not consider the best interests of the children at issue. Gonzalez also requests appellate attorney fees.

**I. Facts and Prior Proceedings**

Gonzalez is the maternal grandmother of I.P. and K.P., ages nine and seven respectively at the time of trial. Because the children's parents largely rejected their parental duties, the children have lived with Gonzalez since birth, along with their half-sister and cousin. The children's mother, Brynn Price, has also lived with Gonzalez and the children intermittently, though Gonzalez remained the children's primary caregiver. David Kelly is the children's father. He has had limited contact with the children, though in recent years he made more of an effort to visit with the children. Kelly cared for the children roughly nine weekends over the course of their lives. There is no decree establishing custody, care, and visitation of the children between Price and Kelly.

Both I.P. and K.P. have behavioral challenges. These are amplified when either parent comes in and out of the children's lives. This is because whenever the boys' schedule and routine are disrupted in some way, they react and "start to have meltdowns." This results in them becoming defiant and agitated, and they refuse to listen to instruction or participate in group activity. Beyond these general changes in behavior, both children's history reveals specific examples of troubling behavior. For example, I.P. has threatened Gonzalez with a knife, requiring Gonzalez to secure all household knives with a lock and develop a safety plan

should I.P. act out in this manner again. He also tried to set his daycare bathroom on fire when he was four. K.P. once tried to jump out of Gonzalez's car.

Both children take various medications under the supervision of a doctor to regulate their behavior. When the children take their medication as prescribed, it helps them manage their behavior but does not eliminate their problematic behavior. They also visit with a therapist weekly and a behavioral health intervention services (BHIS) provider weekly and have done this for several years. Gonzalez arranged for the children to receive this care.

In late August 2017, Kelly informed Gonzalez he was ready to care for the children and would send for them shortly. As a result, Gonzalez petitioned for an involuntary guardianship of both children. Price did not object to the guardianship, but Kelly objected. Gonzalez also sought and received an emergency temporary guardianship and a temporary injunction to prevent Kelly from removing the children from Gonzalez's home. The court also appointed a guardian ad litem to represent the children's best interest.

By late September, Gonzalez and Kelly reached an agreement permitting Kelly to initiate graduated supervised visitation with the children supervised by YSS. This allowed Kelly to meet with the children for two to three hours at a time. Visitation summary notes from the YSS supervisor indicate the children were consistently happy to see Kelly during these visits and that Kelly interacted appropriately with the children.

This case came to trial on March 1, 2018. At trial, several witnesses testified in support of establishing the guardianships. These witnesses include: Gonzalez; Price; Julie Vincent, a teacher at the children's school; Melinda Beard, director of

the children's afterschool daycare; Sarah Story, the BHIS provider; and Kylie Price, Gonzalez's daughter. Kelly; Rhonda Moore-Hunter, Kelly's girlfriend; and Janey Taylor, Kelly's mother, testified on behalf of Kelly. Price presented no evidence. The guardian ad litem's report recommended the court grant the petitions for guardianship. However, the court found Kelly to be a qualified and suitable parent, denied the petitions for guardianship, and terminated the temporary guardianship. Gonzalez now appeals. Additional facts will be discussed as necessary.

## II. Scope and Standard of Review

The involuntary appointment of a guardian is an action at law. *See* Iowa Code § 633.33 (2017); *see also id.* § 633.555 (noting guardianship "shall be tried as a law action"). This indicates our review is for legal error. *See In re Guardianship of M.D.*, 797 N.W.2d 121, 127 (Iowa Ct. App. 2011). However, because our inquiry requires us to consider the best interest of the children, "principles of equity must be applied." *See In re Guardianship of G.G.*, 799 N.W.2d 459, 551 (Iowa Ct. App. 2011). "Therefore, we will affirm if there is substantial evidence in the record demonstrating that the best interests of the children favors dismissing the petitions for guardianship." *Id.* "Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings." *In re Conservatorship of Deremiah*, 477 N.W.2d 691, 693 (Iowa Ct. App. 1991). "Evidence is not insubstantial merely because it could support contrary inferences." *Id.*

## III. Discussion

The best interest of the children at issue is our driving consideration in granting or denying a guardianship. *See In re Guardianship of Knell*, 537 N.W.2d

778, 780 (Iowa 1995). "In determining the best interest of the child[ren], a trial court should review the evidence and determine which party can better provide for the child[ren]'s emotional, social, moral, material, and educational needs." *In re Guardianship & Conservatorship of D.D.H.*, 538 N.W.2d 881, 883–84 (Iowa Ct. App. 1995). We begin with the presumption that it is in a child's best interest for parents to retain care and control of the child. *See M.D.*, 797 N.W.2d at 127. This presumption is recognized in Iowa Code section 633.559: "[T]he parents of a minor child, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." The presumption that a child is best served by a parent's care and control is rebuttable. *See In re Guardianship of Roach*, 778 N.W.2d 212, 214 (Iowa Ct. App. 2009). To rebut this presumption, the non-parent has the burden of providing "proof that the natural parent is not a qualified or suitable caregiver." *M.D.*, 797 N.W.2d at 127. To succeed in gaining guardianship of a child in spite of the strong parental preference, the non-parent must "show that placement with the natural parent 'is likely to have a seriously disrupting and disturbing effect upon the child's development.'" *Id.* at 127–28 (quoting *Knell*, 537 N.W.2d at 782). We consider "the long-range interests as well as the immediate interest of the child." *Knell*, 537 N.W.2d at 781.

Here, the district court concluded Gonzalez failed prove Kelly was not qualified and suitable to parent the children. The court noted Kelly's employment, stable housing, and recent success parenting another child all supported its conclusion that Kelly is a qualified and suitable parent. We do not quarrel with this conclusion and agree Gonzalez failed to prove Kelly was not qualified and suitable to parent the children at the time of trial. *Cf. In re Guardianship of S.K.M.*, No. 16-

1537, 2917 WL 5185427, at *6 (Iowa Ct. App. Nov. 8, 2017) ("[T]his requires evidence the parent cannot provide the child with reasonable parental care, meaning nurturing and protection adequate to meet the child's physical, emotional, and mental health needs and that the parent's inability to provide reasonable parental care poses a substantial and material risk of harm to the child.").

We are not dissuaded by Kelly's problematic past either. Although Kelly has a long criminal history suggesting he was not qualified or suitable to parent in the past, the record revealed no current legal entanglements or troubling behavior. Kelly's mother credibly testified that she is aware when her son is abusing drugs and has not detected any indicators that he is presently abusing drugs. Kelly's daughter is doing well in his care. He secured a home loan to find a larger residence for the family. He maintains steady employment as a painter. This all indicates Kelly is ready to assume his role as father to the children, and we will not deny a parent their proper role as such due to a problematic past without evidence of continuing deficiencies. *See M.D.,* 797 N.W.2d at 128 ("The presumption favoring parental custody is not overcome by evidence of a parent's past immaturity when such indiscretions are not present risks.").

Without a showing that Kelly is not qualified and suitable to parent, the parental presumption is not rebutted. *See M.D.,* 797 N.W.2d at 127. As a result, our best-interest analysis incorporates the presumption that it will be in the children's best interest for Kelly to retain care and control of the children. *Cf. Northland v. Starr,* 581 N.W.2d 210, 213 (Iowa Ct. App. 1998) (considering whether factors overcome the parental preference in a best-interest analysis). To overcome the strong parental preference, Gonzalez cannot simply demonstrate

she has functioned as a satisfactory de facto guardian of the children in the past. *See id.* at 212 ("Recognition that the non-parental party is an excellent parent to the child will rarely be strong enough to interfere with the natural rights of the parent."). In fact, "we have acted in some cases to remove children from conscientious, well-intentioned custodians with a history of providing good care to the children and placed them with a natural parent." *Id.* at 213. Instead, Gonzalez must "show that placement with [Kelly] 'is likely to have a seriously disrupting and disturbing effect upon the child[ren]'s development'" to prove establishing a guardianship is in the children's best interest. *M.D.*, at 127–28 (quoting *Knell*, 537 N.W.2d at 782).

Gonzalez asserts "it would be detrimental at minimum, more likely devastating, to [the children] if they were to be removed from the only routine, life, physical amenities and people they have known and bonded with their entire lives." Certainly, granting the guardianships would ensure the children remain in the same home; attend the same school, daycare, therapy provider, and BHIS provider; retain the same physicians; and continue to reside with one of their half-siblings. Evidence presented indicated a structured routine and schedule is uniquely critical to the children given their behavior challenges. We also note Kelly's testimony indicated he does not fully appreciate the behavioral challenges the children face and did not locate a therapist in his area to treat them. This suggests granting Gonzalez's petition would be in the children's best interest because placement outside of her care would seriously disrupt the children's development.

However, evidence presented also indicates the children are subjected to detrimental inconsistencies in Gonzalez's care. Price, the mother, comes and

goes from Gonzalez's home seemingly at random. This causes the children significant distress by disrupting their critically structured routine, and there is no reason to believe this will cease in the future. While establishing a new routine and schedule with Kelly may initially distress the children, this distress will subside with time unlike the repeated distress the children experience each time Price moves in and out of Gonzalez's home. With regard to our concern Kelly fails to appreciate the children's behavioral challenges, we also have concern Gonzalez over states their challenges. Kelly reassured the district court he would locate a therapist in his area to treat the children. The district court found Kelly's testimony credible, and we are confident he will locate the necessary services for the children. As a result, we cannot say placement with Kelly would seriously disrupt or disturb the children's development any more than continued placement with Gonzalez.

We note, on our record, there is no decree between Kelly and Price establishing a physical-care arraignment for the children. Without such, we cannot state with certainty that moving forward Kelly will be the parent with physical care of the children. However, Kelly testified he intended to file an action to establish his "custody rights" to the children. Given the unique needs of these children to have a well-defined schedule and routine, we hope a definite physical care and visitation determination can be made to provide the children with the stability they require.

Gonzalez requests appellate attorney fees but does not identify any section of the Iowa Code authorizing this court to make such an award. However, upon consideration of "the needs of the party making the request, the ability of the other

party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal" this court has awarded appellate attorney fees in other guardianship cases. *See, e.g.*, *In re Guardianship of M.I.D.*, No. 17-1481, 2018 WL 5840802, at *5 (Iowa Ct. App. Nov. 7, 2018); *In re Guardianship of A.S.*, No. 17-1000, 2018 WL 3471837, at *6 (Iowa Ct. App. July 18, 2018); *In re Guardianship of B.E.W.*, No. 16-0358, 2017 WL 936107, at *2 (Iowa Ct. App. Mar. 8, 2017); *G.G.*, 799 N.W.2d at 554. Upon consideration of these factors, we decline to award Gonzalez appellate attorney fees.

## IV. Conclusion

Gonzalez failed to prove Kelly is an unqualified or unsuitable parent, and the presumption that it is in the children's best interests for Kelly to retain care and control is not rebutted. Gonzalez also failed to prove any seriously disrupting and disturbing effect upon the children's development would occur in Kelly's care. Substantial evidence supports the finding of the district court that the best interests of the children favors dismissal the petitions for guardianship. As a result, we affirm the district court's dismissal of Gonzalez's petitions for guardianship. As we conclude, we must acknowledge Gonzalez's selfless stewardship of the children for nearly a decade and thank her for her care.

**AFFIRMED.**