## IN THE COURT OF APPEALS OF IOWA

No. 19-1631
Filed June 3, 2020

**IN THE MATTER OF THE GUARDIANSHIP OF L.G.,**

**ROBIN ULMER a/k/a ROBIN REISZ,**
Guardian-Appellant.

_____

Appeal from the Iowa District Court for Harrison County, Greg W. Steensland, Judge.

A child's guardian appeals a district court order terminating the guardianship. **AFFIRMED.**

Whitney A. Estwick of Estwick Law, LLC, Sidney, for appellant.

David A. Poore, Council Bluffs, for appellees.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A child's guardian appeals a district court order terminating the guardianship. The guardian contends the child's parents failed to prove a substantial change of circumstances warranting termination or that termination was in the child's best interests.

## I.    *Background Facts and Proceedings*

A child, born in 2012, interacted with his putative paternal grandmother, Robin. In time, Robin took over as the child's caretaker. Paternity testing later established that someone other than Robin's son was the child's father.

When the child was three years old, Robin filed a guardianship petition listing her son as the legal father. She attempted service on the mother at her last known address. The mother did not file an answer. The district court filed a default order appointing Robin as guardian.

In 2017, the child's mother and biological father filed a petition to terminate the guardianship. They alleged the guardian was "not related by any means to the [child]" because, at the time the guardianship "order was final," the paternity of Robin's son had been "disestablished." They further alleged they were "suitable and qualified to act as guardians of the child" and the guardianship should "be terminated." Robin filed an answer asserting that it was in the child's best interests to remain in her care. Following a hearing, the district court determined the "guardianship was appropriately created" and it would "continue." The court ordered Robin to file annual reports and ordered the clerk to send the reports to the parents. The court further ruled, "At a hearing on said report and whether the guardianship shall continue, either biological parent can establish their ability to

meet the medical and emotional needs of [the child]." Finally, the court established a visitation schedule for the parents.

The following year, Robin filed an annual report as directed. She asked to continue as guardian of the child. The parents filed a resistance to approval of the report and requested a "hearing on the annual report . . . to determine whether the guardianship should continue." The district court scheduled the matter for hearing.

After the hearing, the district court filed the first of two 2019 orders concluding it was "time to terminate the guardianship." The court ordered a "transition" period to last through the school year, together with "incremental visitations" and "continuing counseling" for the child "to help with the adjustment." The court also ordered the child to be transferred to his mother at the end of the 2019 school year. The court scheduled a telephone hearing for a date three months after the transfer, "anticipat[ing] that barring unforeseen circumstances," it would enter "a final Order terminating the guardianship at that time."

On the date of the scheduled transfer, Robin filed a motion seeking a modification "to allow [the child] to attend summer school in" his existing school district and "reside with [her] during that time." She also asked that the upcoming hearing be scheduled as an evidentiary hearing. The mother resisted on several grounds and noted that she took custody of the child that day. The district court held a non-evidentiary telephone conference as scheduled and, following the conference, filed a second order discounting the guardian's concerns and terminating the guardianship. Robin appealed.

## II.   Termination of Guardianship / Best Interests

The statutory grounds for termination of a guardianship include a "determination by the court that the . . . guardianship is no longer necessary." Iowa Code § 633.675(1)(d) (2015). The parties disagree on who bore the burden of proof on this issue. Robin argues the burden rested with the parents to "prove a substantial change of circumstances, warranting a change of custody." The parents argue they were entitled to a presumption that they were the preferred caretakers and Robin failed to overcome the presumption.

At the time of this proceeding, there was indeed a statutory preference in favor of the parents. Specifically, Iowa Code section 633.559 stated, "the parents of a minor child, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." The provision created "a presumptive preference of parental custody" that was rebuttable. *See In re Guardianship of Roach*, 778 N.W.2d 212, 214 (Iowa Ct. App. 2009).[1] Although the provision applied only to the appointment of a guardian, it was construed as extending to all phases of a guardianship proceeding, including termination of the guardianship. *See Maruna v. Peters*, No. 12-0759, 2013 WL 988716, at *2 (Iowa Ct. App. Mar. 13, 2013) ("Pursuant to section 633.559, [the father] had a presumptive right to custody of his child and [the guardian] had 'the burden to overcome the parental preference and show that the best interest of [the child] required continuation of the guardianship.'" (citation omitted)); *In re Guardianship of Blair*, No. 01-1565, 2003 WL 182981, at *5 (Iowa Ct. App. Jan. 29, 2003) ("Because of the fundamental

---

[1] Section 633.559 was repealed effective January 1, 2020. *See* Iowa Acts 2019 ch. 56, § 43, 44.

constitutional rights implicated, a nonparent bears the burden of persuasion throughout guardianship proceedings, including initial appointment, modification, or termination to rebut the presumption favoring parental custody by providing clear and convincing evidence of parental unsuitability." (citing *In re Guardianship of Hedin*, 528 N.W.2d 567, 581 (Iowa 1993))).

That said, a parent was not entitled to the statutory preference if there was a prior custody determination following a full evidentiary hearing and the court found the preference was overcome. *See In re Guardianship of Stewart*, 369 N.W.2d 820, 824 (Iowa 1985) ("An involuntary guardianship would eliminate the parental preference from later consideration . . . if the relative custodial rights of the proposed guardian and the parent were put in issue and tried in the guardianship proceeding."). The court of appeals articulated the respective burdens in such a situation as follows: "[O]nce a finding has been made in a previously litigated action, rebutting the presumption in favor of the natural parent, the burden of proof changes such that the natural parent must prove a substantial change of circumstances, warranting a change of custody." *Roach*, 778 N.W.2d at 215. The court underscored the principle that termination of a guardianship must be in the child's best interests. *See id.* at 214; *accord Stewart*, 369 N.W.2d at 824 ("[T]he first and governing consideration must be the best interest of the affected child.").

Robin argues the *Roach* standard applied. In her view, the 2017 order "continu[ing]" the guardianship was effectively a denial of the parents' petition to terminate the guardianship following a full opportunity to litigate the issue, thereby shifting the burden of proof to the parents to establish a substantial change of

circumstances. She contends the parents failed to establish a substantial change between the 2017 order and the 2019 orders. The parents respond that the burden never shifted to them because the 2017 order "did not state that the presumption in favor of [them] had been overcome," "did not overrule [their] petition" to terminate the guardianship, "did not dismiss the petition," and "did not find [them] unqualified or unsuitable." *See Blair*, 2003 WL 182981, at *5 (noting an early order "expressly declined to make the requisite findings concerning [the parent's] suitability" and "also expressly provided that the resulting placement was intended to be temporary," allowing the parent "to enjoy the controlling custodial presumption" and leaving the burden with the guardians to rebut the presumption).

There is much to commend the parents' argument to us. The 2017 order stated the child would not be returned to the parents "at this time" and left the door open for the parents to object at a later time. *See Stewart*, 369 N.W.2d at 824 (noting order was "more akin to an agreed order for temporary custody entered during the pendency of dissolution proceedings," which would be "superceded by the more permanent dissolution decree"). Nonetheless, giving Robin the benefit of the doubt, we assume without deciding that she overcame the presumption of a parental preference when she litigated the issue in 2017, thereby shifting the burden to the parents to establish a substantial change of circumstances. *See In re Guardianship of M.D.*, 797 N.W.2d 121, 127 (Iowa Ct. App. 2011) (noting the presumption can be overcome by "proof that the natural parent is not a qualified or suitable caregiver").

The district court essentially determined that the mother, who was the only parent seeking physical care of the child, established such a change.[2] In 2017, the court found the mother "cannot provide the stable environment required by [the child]." In 2019, the court found, "The key thing about [the mother] is that she appears to have matured and grown considerably since [the child] was placed with [Robin]." As an example, the court cited the mother's evolving views about Robin. The court stated her opinions were initially marked by "pettiness," but she now recognized that the child "should maintain a relationship with [Robin] throughout his life." The record supports the court's findings.[3] In the hearing preceding the 2019 orders, the mother testified the child "love[d]" Robin and they had "a very close relationship." She stated, Robin took "good care of" him and the child needed "to still see her and interact with her." She insisted she did not "want to rip him away from her" because "[t]hat wouldn't be fair to him or in his best interests."

The 2017 order also stated the mother's "constant change in residences and employment" were "not conducive to [the child's] emotional needs." By the time of the hearing preceding the 2019 orders, the mother testified she lived in the same house "for two years" and was working regular daytime hours. Again, her testimony supports the district court's finding of the mother's maturity and growth.

Along the same lines, in 2017, the court noted the mother, father, and others in the parents' households were smokers. The court found that the child "was

---

[2] The court stated the child's father "support[ed] termination of [the] guardianship and placement of [the child] with his mother."

[3] Our review of this issue is stymied by the absence of a transcript of the 2017 hearing. But because the 2017 order was not appealed and is not subject to collateral attack, we accept the district court's findings.

admitted to the [emergency room] unit of hospitals for respiratory problems" on six occasions and "[c]ontinued exposure to secondhand smoke" would make the child "at risk for asthma." At the hearing preceding the 2019 orders, the mother testified she "never had [the child] have an episode in [her] care" but she knew "how to identify" the symptoms if they happened. Although she acknowledged her mother smoked, she testified she did not smoke in their home. She also pointed out that she had a regular doctor to whom she could take the child if needed. In short, she addressed the court's 2017 concerns about the child's health, providing further support for the court's implicit determination that circumstances had changed.

In making that determination, the district court also considered the testimony of the child's therapist. After finding she was the "one truly disinterested person," the court said it "did not sense any problems that [the therapist] thought [the child] would continue with, if the guardianship was terminated." On our de novo review of the therapist's testimony, we glean some equivocation on her part. Nonetheless, she agreed the child would not be damaged emotionally if he were placed in the mother's care. *See* Iowa Code § 633.33; *Roach*, 778 N.W.2d at 213 (setting forth standard of review).

Finally, we are persuaded that the bond the child shared with his older brother and with the mother's newborn child supported termination of the guardianship. *See In re I.S.M.*, No. 01-0407, 2002 WL 1331878, at *2 (Iowa Ct. App. June 19, 2002) (citing "the admonition against separating siblings"). The district court cited the bond in concluding the guardianship should be terminated.

The district court also determined termination of the guardianship "would be in [the child's] best interests." The court was especially equipped to make the best

interest determination "because it had the opportunity to observe and listen to the parties and other witnesses." *Stewart*, 369 N.W.2d at 824. We find no reason to disagree.

We affirm the termination of the guardianship.

### III. *Appellate Attorney Fees*

Both Robin and the parents request appellate attorney fees. They cite no statutory authority that would allow us to order one party to pay the other's appellate attorney fees. *See M.D.*, 797 N.W.2d at 130. Accordingly, we decline both requests.

**AFFIRMED.**