# IN THE COURT OF APPEALS OF IOWA

No. 19-1976
Filed October 21, 2020

**IN THE MATTER OF THE GUARDIANSHIP OF L.O. and D.O.,**

**KYLE PETERSEN and STACEY PETERSEN, Guardians,**
Appellants,

**H.O., Mother,**
Appellee.
_____

Appeal from the Iowa District Court for Plymouth County, Tod Deck, Judge.


The guardians for two minor children appeal an order granting additional visitation to the mother. **AFFIRMED.**


Michele Lewon of Michele Lewon, PLC, Sioux City, for appellants.

Daniel M. Northfield, Urbandale, for appellee.


Considered by Bower, C.J., and May and Ahlers, JJ.

**MAY, Judge.**

This case concerns the guardianship of two minor children, L.O. and D.O. The children's guardians appeal an order granting additional visitation to the mother. We affirm.

## I. Background Facts and Prior Proceedings

Since 2014, Kyle and Stacey Petersen have been the guardians for L.O. and D.O. The mother filed her first petition to terminate the guardianship in 2016. A guardian ad litem (GAL) from the Juvenile Law Center was appointed. The district court denied the mother's request to terminate the guardianship but granted her scheduled visitation. This court affirmed. *In re Guardianship of L.O. & D.O.*, No. 16-1598, 2017 WL 1104909, at *3 (Iowa Ct. App. Mar. 22, 2017).

In 2018, the mother filed a second petition to terminate the guardianship. The Juvenile Law Center filed a motion to withdraw as GAL. The court granted the motion. And the case proceeded to trial without the appointment of another GAL. The district court again denied the mother's request to terminate the guardianship but granted her additional visitation. The guardians now appeal.

## II. Standard of Review

Actions to terminate guardianships are equitable in nature. *In re Guardianship of B.J.P.*, 613 N.W.2d 670, 672 (Iowa 2000). And we review equitable actions de novo. Iowa R. App. P. 6.907. We give weight to the factual findings of the district court, but we are not bound by them. *In re Guardianship of Stewart*, 369 N.W.2d 820, 822 (Iowa 1985).

### III. Analysis

The guardians contend we should reverse the grant of additional visitation for three reasons: (1) the mother's request for additional visitation was not properly pled; (2) the district court used the incorrect standard in modifying the mother's visitation; and (3) a GAL should have been appointed pursuant to Iowa Rules of Civil Procedure 1.211 and 1.212. We will address each in turn.

#### A. Request for additional visitation

The guardians claim the district court erred in awarding the mother additional visitation because she did not plead or otherwise raise a request for additional visitation prior to trial. In her second petition, the mother "respectfully requests that the guardianship of the wards be terminated and that she be granted custody of the wards." She also complains "[t]he guardians are interfering" in her visitation. But, before trial, the mother did not make a specific request for additional visitation.

As the mother notes, however, "[u]nder Iowa's notice pleading rules, a prayer for general equitable relief is to be construed liberally, and will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence." *Lee v. State*, 844 N.W.2d 668, 679 (Iowa 2014) (internal quotation marks and citation omitted). The guardians claim they "had no notice that [the mother] intended to request additional visitation, only that she intended to request a termination of the guardianship." But the mother's second petition expressly references her conflicts with the guardians over the existing visitation arrangement—and her desire to have more time with

her children.[1]  Terminating the guardianship would fulfill her desire for more time with the children—*as would* the lesser remedy of expanding her visitation.  So we think the guardians had sufficient notice that additional visitation was a possible remedy.  *See id.*  Indeed, at trial, the guardians elicited testimony from the children's counselor as to whether it would "be in" L.O.'s "best interest" for "visitations to expand or become more frequent."  And the guardians have not described any other evidence that they might have presented if only the mother's pleadings had been different.[2]

Viewing the mother's prayer for relief liberally and in light of the record as a whole, we think the district court was right to consider the mother's request for additional visitation.  *See Crank v. Winters*, No. 19-0724, 2020 WL 1310341, at *4–5 (Iowa Ct. App. Mar. 18, 2020); *Batinich v. Renander*, No. 15-2053, 2017 WL 1086220, at *7 (Iowa Ct. App. Mar. 22, 2017).

### B.  Standard to modify visitation

Next, the guardians claim the district court erred in applying a "significant change in circumstances" standard to modify and increase the mother's visitation.  In its order, the court found the mother's "continued stability and desire to be a part of the children's lives are *significant* and enough of a change since the prior order to warrant [extended visitation]."  (Emphasis added.)  And the district court noted

---

[1] The mother's second petition states the guardians: (1) "are interfering in the visitation ordered for [the mother] with the wards"; (2) "use the wards as a method to extract visitation changes from [the mother]"; (3) "fail to adequately communicate with [the mother] regarding the wards"; and (4) "are deceptive with [the mother] regarding the wards' activities."

[2] The guardians suggest they limited their discovery efforts because the mother's petition did not mention visitation.  But the guardians do not explain what else they might have sought in discovery if the mother's pleadings had been different.

that "[a]ppellate courts in this state have consistently held that modification of visitation rights in child custody matters shall occur upon a showing of a significant (not substantial) change in circumstances since the previous order." But the guardians argue that because the mother's parental preference was lost when the guardianship was established, she now "has the burden to show by clear and convincing evidence that a *substantial* change in circumstances exists to warrant modification of the existing guardianship."[3] (Emphasis added.)

The guardians primarily rely on *In re Guardianship of Roach*, 778 N.W.2d 212 (Iowa Ct. App. 2009). In *Roach*, a mother twice petitioned to terminate the guardianship of her minor child. 778 N.W.2d at 213. On the second petition, the district court agreed to terminate the guardianship after finding the mother "made a *prima facie* showing of suitability as a parent" and the guardians did not "prove [the mother] was unsuitable." *Id.* at 213–14. This court reversed that decision, finding that the parent "must prove a *substantial* change of circumstances, warranting a change of *custody*." *Id.* at 215 (emphasis added).

We think *Roach* should be distinguished. The *Roach* court ruled on the termination of a guardianship—essentially a question of custody, not visitation. *See id.* at 213. But the issue before us is only visitation—not termination, not custody. So we do not believe *Roach*'s "substantial change" standard governs here.

Indeed, the guardians cite no authority for the proposition that the district court was required to impose a "substantial change" standard instead of a

---

[3] This court previously noted that the mother had "no parental preference." *L.O. & D.O.*, 2017 WL 1104909, at *2.

"significant change" standard. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Nor can we find any fault in the district court's approach. Because efforts to *terminate* a guardianship are ultimately "child custody determination[s]," they "draw[] from the same child custody principles enumerated in dissolution of marriage cases." *Roach*, 778 N.W.2d at 215 (citing *Thein v. Squires*, 97 N.W.2d 156, 161 (Iowa 1959)). Likewise, we think the *visitation* principles applied in dissolution of marriage cases could also apply to a *visitation* dispute between a parent and guardians. And, as the district court understood, although "a *substantial change in circumstances*" is needed to change the *custody* provisions of a dissolution decree, "a much less extensive change in circumstances is generally required" to change *visitation*. *See In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009) (citation omitted). Likewise, it was appropriate for the district court to impose a "different, less demanding burden" when deciding whether to change the mother's visitation in this guardianship matter. *See id.* ("A different, less demanding burden applies when a parent is seeking to change a visitation provision in a dissolution decree."); *see also In re Marriage Rykhoek*, 525 N.W.2d 1, 3 (Iowa Ct. App. 1994) ("Generally, a much less extensive change in circumstances need be shown in visitation rights cases."); *Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994) ("The degree of change required in a modification of visitation rights is much less than the change required in a modification for custody.").

### C. Appointment of a GAL

Finally, the guardians claim the district court erred in failing to appoint a GAL to represent the children. But the mother claims the issue was not preserved below. And, in their brief, the guardians do not state how error was preserved. *See* Iowa R. App. P. 6.903(2)(g)(1) (requiring the appellant's brief to state in relation to each argument "how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided.").

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised *and decided* by the district court before we will decide them on appeal." *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 883 (Iowa 2014) (emphasis added) (citation omitted). From the record, we cannot find that the guardians raised—and the district court decided—the guardian's present arguments concerning a GAL. So we doubt error was preserved. Even assuming it was, though, we do not believe the guardians have demonstrated error by the district court. *See Clement v. Irwin*, No. 19-1192, 2020 WL 4498860, at *2 (Iowa Ct. App. Aug. 5, 2020) (collecting cases noting we will affirm when an appellant fails to demonstrate error).

The guardians claim Iowa Rules of Civil Procedure 1.211 and 1.212 required appointment of a GAL.[4] "Iowa court rules have the force and effect of laws, and therefore 'we interpret rules in the same manner we interpret statutes.'" *State v. Mootz*, 808 N.W.2d 207, 221 (Iowa 2012) (quoting *City of Sioux City v. Freese*, 611 N.W.2d 777, 779 (Iowa 2000)). So we look for the meaning of our

---

[4] The guardians acknowledge the district court was not required to make an appointment under Iowa Code section 633.561 (2018).

rules in their words.  *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) ("Using traditional interpretive tools, we seek to determine the ordinary and fair meaning of the statutory language at issue.").

Here are the words of rule 1.211:

> ***No judgment*** *without a defense* shall be entered against a party then a minor, or confined in a penitentiary, reformatory or any state hospital for the mentally ill, or one adjudged incompetent, or whose physician certifies to the court that the party appears to be mentally incapable of conducting a defense.  *Such defense shall be* by guardian ad litem; but the conservator (and if there is no conservator, ***the guardian***) of a ward or the attorney appearing for a competent party ***may defend*** unless the proceeding was brought by or on behalf of such fiduciary or unless the court supersedes such fiduciary by a guardian ad litem appointed in the ward's interest.

(Emphasis added.)

And here are the words of rule 1.212:

> If a party served with original notice ***appears to be subject to rule 1.211***, the court *may* appoint a guardian ad litem for the party, or substitute another, in the ward's interest.  Application for such appointment or substitution may be by the ward, if competent, or a minor over 14 years old; otherwise by the party's conservator or guardian or, if none, by any friend or any party to the action.

(Emphasis added.)

These words do not support the guardian's position.  Rule 1.212 applies only to parties who "appear[] to be subject to rule 1.211."  And rule 1.211 only applies to parties who are in danger of having a "judgment" entered "against" them.  But we do not believe an increase in a parent's visitation constitutes a "judgment . . . against" the child.  Indeed, our courts order visitation to advance *a child's best interest*.  *See, e.g.*, *Matter of Guardianship & Conservatorship of Ankeney*, 360 N.W.2d 733, 737 (Iowa 1985) ("If the best interest of the child dictates visitation,

we hold that there is no logical reason to prevent visitation merely because the party seeking visitation is not entitled to it of right.").

Moreover, rule 1.211 makes it clear that—to whatever extent children need a "defense"—their "guardian" could provide it. And that is—in a matter of speaking—what happened here. The children's guardians resisted the mother's efforts to abolish the guardianship or, alternatively, obtain more visitation. So even if rule 1.211 applied, its requirements were fulfilled. The district court did not err.

## IV. Conclusion

Following our de novo review, we find no reason to reverse or modify. We affirm.

**AFFIRMED.**